**UNITED STATES of America,**
**Plaintiff,**

v.

**Nathan WOLFSON, William F. Emmons,**
**Edward Fishbein, et al., Defendants.**

**Crim. A. No. 1909.**

United States District Court,
D. Delaware.

April 19, 1971.

---

F. L. Peter Stone, U. S. Atty., and John G. Abramo, Asst. U. S. Atty., Wilmington, Del., for the United States.

Albert L. Hutton, Jr., Boston, Mass., for defendant, Edward Fishbein.

## MEMORANDUM OPINION

LATCHUM, District Judge.

In this multi-defendant criminal action, the defendant, Edward Fishbein, at the time set for sentencing, moved pursuant to Rule 32(d), F.R.Crim.P., before sentence was imposed, to withdraw his plea of *nolo contendere* to Count 2 of the indictment.

The facts relevant to the defendant's motion may be summarized as follows: On June 7, 1968, the Grand Jury returned a twenty-nine count indictment against Nathan Wolfson, William F. Emmons, Albert Frost, James B. Thompson and Edward Fishbein. Count 1 charged all of the defendants, under 18 U.S.C. § 371, with a conspiracy to violate the mail fraud statute, 18 U.S.C. § 1341. Counts 2 through 29 charged various of the defendants with substantive violations.[1] Fishbein, in addition to the conspiracy charge in Count 1, was charged in Counts 2, 12, 16, 17, 18, 23, 26, 27 and 29 with substantive violations of the mail fraud statute.

On July 19, 1968, Fishbein entered a not guilty plea to all charges against him.[2] During July 1968, through his then retained counsel, Thomas B. Troy of Boston, Massachusetts, Fishbein either filed or joined in a number of pretrial motions: (1) for the production and inspection of the grand jury proceedings which led to the indictment, (2) for the dismissal of the conspiracy count on the ground of duplicity, (3) for a severance, (4) for a bill of particulars, (5) for the suppression of certain documentary evidence and (6) for the production and inspection of all documents in the government's possession seized from others. After extensive hearings were held, in which Fishbein's attorney took an active and important part, the various pretrial motions were finally disposed of on May 13, 1969.[3] See 294 F.Supp. 267 (Nov. 15, 1968); 294 F.Supp. 279 (Nov. 27, 1968); 299 F.Supp. 1246 (May 13, 1969).

At a meeting of counsel held on June 4, 1969, a pretrial conference was set for August 19, 1969 and trial by a jury, estimated to take five to six weeks, was scheduled to commence on November 3, 1969. By letter of June 30, 1969 Fishbein advised the Court that he had retained Ronald Chisholm and William S. Pigeon of Boston as his counsel in place of Mr. Troy. On July 1, 1969, Mr. Troy moved to withdraw as Fishbein's counsel and this motion was granted on July 8, 1969.

On November 3, 1969, at the commencement of the trial and just before the jury was selected, Mr. Chisholm, one of Fishbein's attorneys, moved the

---

1. For a detailed analysis of the conspiracy charge, see United States v. Wolfson et al., 322 F.Supp. 798 (D.Del.1971).

2. Defendant has been at large of his own recognizance since his initial appearance in Court on June 21, 1968.

3. All of Fishbein's motions were denied except his motion to inspect those papers and documents deemed material to the defense which were seized or obtained by process by the government from other persons. 294 F.Supp. at 278; 294 F.Supp. at 279.

Court for leave to change his client's plea of not guilty to a plea of *nolo contendere* to Count 2. In open court, out of the presence of the jury, the following took place (Trial Rec. 2–4):

"MR. STONE [United States Attorney]: Your Honor, Mr. Chisolm [*sic*] was previously admitted pro hac vice, and is present in the Courtroom representing Mr. Fishbein. I believe he has an application for Your Honor.

"THE COURT: Mr. Chisolm [*sic*]?

"MR. CHISOLM [*sic*]: If it please the Court, the Defendant Fishbein would like to offer a plea of nolo to count two of the indictment. I have just discussed it with him and he does know he has a right to trial by jury, and that by offering this plea, if the Court please, he is waiving his right to trial by jury. I discussed the penalty with him and he realizes he can be penalized the same as if he were found guilty, and he offers this plea to the Court. I have advised him of his rights and discussed it with him, and this is his wish.

"THE COURT: Let the record show that there is no member of the jury panel present at this proceeding.

"Will Mr. Fishbein come forward with his counsel?

"You are Edward Fishbein, are you not?

"DEFENDANT FISHBEIN: Yes sir.

"THE COURT: Your attorney Mr. Chisolm [*sic*] is here in Court with you and he is your attorney?

"DEFENDANT FISHBEIN: Yes sir.

"THE COURT: Do you wish the indictment read to you at this time?

"DEFENDANT FISHBEIN: No sir. I have read it, sir.

"THE COURT: You have discussed the indictment with your attorney?

"DEFENDANT FISHBEIN: Yes sir, I have.

"THE COURT: Do you understand the nature of the charge in count two, with regard to which you are changing your plea?

"DEFENDANT FISHBEIN: Yes sir.

"THE COURT: Do you understand that the Court may impose the same sentence on a plea of nolo contendere as if you pleaded not guilty and stood trial and were convicted?

"DEFENDANT FISHBEIN: Yes sir, I do.

"THE COURT: Do you also understand you are entitled to stand on your plea of not guilty, and be tried by a jury, produce evidence on your behalf, be confronted by witnesses, and have assistance of counsel?

"DEFENDANT FISHBEIN: Yes sir, I do.

"THE COURT: Has any person made any promise or suggestion to you that you would receive a lighter sentence or some other form of leniency if you changed your plea to nolo contendere?

"DEFENDANT FISHBEIN: No sir.

"THE COURT: Do you now offer to change your plea from not guilty to nolo contendere on count two freely and voluntarily and of your own accord?

"DEFENDANT FISHBEIN: Yes sir, I do.

"THE COURT: What is the Government's position with regard to this plea?

"MR. STONE: We take no position, Your Honor. We are not opposed to it.

"THE COURT: All right. The Court consents to the plea of nolo contendere to count two of the indictment by the Defendant Fishbein herein. How do you plead, Mr. Fishbein?

"DEFENDANT FISHBEIN: Nolo contendere, sir.

"THE COURT: I will ask for a pre-sentence report and you will be advised as to when to appear.

"MR. STONE: Your Honor, I would like the record to show that the other four Defendants are present during this proceeding while this is taking place.

"THE CLERK: The plea has been endorsed on the indictment, Your Honor."

After the Court accepted Fishbein's *nolo contendere* plea to Count 2, he and his retained counsel withdrew from the courtroom and took no further part in the trial.

The case proceeded to trial with the remaining four defendants and consumed twelve full trial days between November 3 and 25, 1969. The government called eighteen witnesses, two from Canada, three from Texas, two from Missouri, seven from Pennsylvania, two from Delaware and one from Maryland. The defendants produced one witness from Port Jefferson Station, New York. The government introduced eighty documentary exhibits and the defendants six. The trial transcript covers 1590 pages. Needless to say, the trial was complicated and protracted.

At the close of the government's case, defendant Frost's motion for acquittal was granted without government objection (Trial Rec. 1182) and defendant Thompson's motion for acquittal was granted over the government's objection (Trial Rec. 1312). Motions for acquittal as to defendants Wolfson and Emmons were granted with respect to Counts 11, 12, 16, 17, 18 and 22 of the indictment. On November 25, 1969, the jury found Wolfson and Emmons guilty on all the remaining counts in which they were named.[4]

Fishbein, as well as Wolfson and Emmons, were charged jointly with mail fraud in Counts 12, 16, 17 and 18. Since judgments of acquittal were entered for Wolfson and Emmons on these counts at the end of the government's case because of lack of proof, it can be assumed that those counts would also have failed with respect to Fishbein had he gone to trial with his co-defendants on his "not guilty" plea to these counts.[5]

Count 2, to which Fishbein entered a plea of *nolo contendere*,[6] charges essentially that in pursuance of a scheme to defraud a letter written by Wolfson, acting on behalf of himself, Emmons and Fishbein, was mailed to Theodore Clutz of Multi-Line Underwriters of Kansas City, Missouri stating that all insurance policies written by Multi-Line Underwriters, acting as local agents for Agents General Insurance Company, Ltd. of Toronto, Canada, were binding and effective, when in fact the defendants at the time had been informed and knew that they had no authority to authorize policies to be written in the United States for Agents General.

4. Both were found guilty of the conspiracy charge in Count 1. In addition Wolfson was convicted of 16 substantive counts numbered 2, 5, 6, 7, 10, 14, 15, 19, 20, 21, 23, 24, 26, 27, 28 and 29 in the indictment and Emmons was convicted of 15 substantive counts, numbered 2, 3, 4, 7, 10, 14, 15, 20, 21, 23, 25, 26, 27, 28 and 29.

5. It is by no means assured that the offenses charged in these counts would not be proven if the case were to be tried a second time.

6. Fishbein's co-defendants, Wolfson and Emmons, were convicted on Count 2.

After considering Wolfson and Emmons' post-trial motions for judgments of acquittal and for a new trial, the Court granted their motions for judgments of acquittal, pursuant to Rule 29(c), F.R.Crim.P., as to Counts 4, 5, 6, 10 and 21 on the ground that the evidence was insufficient to sustain their convictions on these counts primarily because there was no adequate proof that the letters were received in the mail. The Court denied their motions for acquittal as to the rest and their motions for a new trial. United States v. Wolfson et al., 322 F.Supp. 798 (D.Del. 1971).

Rule 32(d), F.R.Crim.P., provides:

"A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

This rule has been construed to establish two separate standards for the allowance of the withdrawal of guilty or *nolo contendere* pleas. One standard is to be applied on motions for withdrawal of such pleas before the imposition of sentence; another is to be applied when the motion is made following sentence.[7] United States v. Young, 424 F.2d 1276, 1279 (C.A. 3, 1970).

■ In weighing motions for withdrawal of guilty or *nolo contendere* pleas *before* sentencing, as the present motion seeks, the test to be applied is "fairness and justice." United States v. Stayton, 408 F.2d 559, 561 (C.A. 3, 1969). While such requests before sentence "should be construed liberally in favor of the accused," Kirshberger v. United States, 392 F.2d 782, 784 (C.A. 5, 1968); United States v. Young, supra, 424 F.2d at 1279; Woodward v. United States, 426 F.2d 959, 964 (C.A. 3, 1970), this does not mean that every motion for withdrawal of a guilty or *nolo contendere* plea before sentence should be granted.

■ There is no absolute right to withdraw such pleas; the right to do so rests in the sound discretion of the trial court. Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964); United States v. Ptomey, 366 F.2d 759, 760 (C.A. 3, 1966). Furthermore, if the withdrawal of such pleas results in substantial prejudice to the government, then the discretionary motion should be denied. United States v. Stayton, supra, 408 F.2d at 561–562; see Farnsworth v. Sanford, 115 F.2d 375, 377 (C.A. 5, 1940), cert. den. 313 U.S. 586, 61 S.Ct. 1109, 85 L.Ed. 1541 (1941); American Bar Association (ABA) Minimum Standards, Pleas of Guilty § 2.1(b), Approved Draft, 1968.[8]

■ The question for decision is whether the Court in the exercise of its discretion should permit Fishbein to now withdraw his *nolo contendere* plea to Count 2 in the light of these principles and under the circumstances of this case. I think not.

Two arguments have been advanced by Fishbein in support of his motion. First, it is claimed that at the time the *nolo contendere* plea was accepted, the Court failed to inquire into the "factual basis" for the plea, as required by Rule 11, F.R.Crim.P., as interpreted by McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).[9] However, the defendant has

---

7. In order to avoid motions for withdrawal based on dissatisfaction with sentence, once imposed, Rule 32(d) requires that a *post-sentence* motion should be denied unless "manifest injustice" to the defendant will result. Sullivan v. United States, 348 U.S. 170, 174–175, 75 S.Ct. 182, 99 L.Ed. 210 (1954); United States v. Washington, 341 F.2d 277, 281 (C.A.3, 1965), cert. den. sub nom., DeGregory v. United States, 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965) reh. den. 382 U.S. 933, 86 S.Ct. 317, 15 L.Ed.2d 346 (1965); United States v. Shneer, 194 F.2d 598 (C.A.3, 1952).

8. The ABA Minimum Standards, Pleas of Guilty § 2.1(b) provides in part: "Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

9. The defendant does not contend in support of his present motion that Rule 11 was not followed in other respects. He admits, as he must, in view of his statements contained in the transcript of the proceedings set forth above, (a) that he

misconstrued Rule 11 and the scope of the *McCarthy* holding.

Rule 11, F.R.Crim.P., provides, in relevant part:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such a plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. \* \* \* The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

Fishbein is correct that before a *guilty* plea may be accepted Rule 11 "requires the judge to satisfy himself that there is a factual basis for the plea," that is "[t]he judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" McCarthy v. United States, supra, 394 U.S. at 467, 89 S.Ct. at 1171. What Fishbein overlooks, however, is that this mandate applies only to "guilty" pleas and not to *"nolo contendere"* pleas.

■ Rule 11 makes a clear distinction between the two pleas in so far as the Court's duty in determining whether a factual basis exists for such pleas. If the plea is "guilty", the Court must be satisfied that there is a factual basis for that plea, but if the plea is *"nolo contendere"* no such duty is imposed

upon the Court.[10] This distinction between a guilty plea and a *nolo contendere* plea is succinctly pointed out by Mr. Justice White in the majority opinion of the United States Supreme Court in North Carolina v. Alford, 400 U.S. 25, 36 (1970) footnote 8, 91 S.Ct. 160, 166, 27 L.Ed.2d 162:

"Throughout its history, that is, the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed.Rule Crim.Proc. 11 preserves this distinction in its requirement that a court cannot accept a guilty plea 'unless it is satisfied that there is a factual basis for the plea'; there is no similar requirement for pleas of *nolo contendere,* since it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt."

Thus, the Court holds that it was not required by Rule 11 to determine the extent of Fishbein's participation in the offense charged in Count 2 at the time the Court consented to and accepted his *nolo contendere* plea.

■ Furthermore, the Court intentionally did not interrogate Fishbein at the time of the *nolo* plea as to his participation in the offense because to have done so would have destroyed the unique purpose of such a plea. A *nolo contendere* plea means literally: "I will not contest it." Piassick v. United States, 253 F.2d 658, 661 (C.A. 5, 1958). It "is a mere statement of unwillingness to contest and no more," Mickler v. Fahs, 243 F.2d 515, 517 (C.A. 5, 1957),

---

was personally addressed by the Court, (b) that he fully understood the nature of the charge to which the *nolo* plea was entered, (c) and that the plea was voluntarily and freely given.

10. The 1966 Notes of the Advisory Committee to Rule 11 stated in part: "For

a variety of reasons it is desirable in some cases to permit entry of judgment upon a plea of nolo contendere without inquiry into the factual basis for the plea. [The last sentence to rule 11] is not, therefore, made applicable to pleas of nolo contendere."

although it does admit "every essential element of the offense well pleaded in the charge," United States v. Lair, 195 F. 47, 52 (C.A. 8, 1912), cert. den. 229 U.S. 609, 33 S.Ct. 464, 57 L.Ed. 1350 (1913) and thus is tantamount to "an admission of guilty for the purposes of the case." Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926).

■ However unlike a plea of "guilty", which constitutes an *express admission* and may be used in evidence in a subsequent civil suit arising from the same transaction, 4 Wigmore On Evidence (3rd ed. 1940) § 1066, p. 59; McCormick On Evidence (1954) § 242, p. 512, a *nolo contendere* plea is inadmissible in a subsequent civil action as an admission of the offense. It "does not bind the defendant in a civil suit for the same wrong"; it is "a confession only for the purpose of the [particular] criminal prosecution" in which the plea is given. Berlin v. United States, 14 F.2d 497, 498 (C.A. 3, 1926); United States v. One Chevrolet Stylemaster Sedan, 91 F.Supp. 272, 275 (D.Colo. 1950). Had the Court required Fishbein to expressly admit for the record his participation in the Count 2 offense, its effect would have been no different as far as civil sanctions and liabilities are concerned than if he had entered a guilty plea. The admissions could have been used as evidence in subsequent civil actions arising from the same wrong. But as long as his *nolo* plea stands, it cannot be used as an admission of wrong in a civil proceeding to revoke his insurance broker's license or in any other proceeding where civil liabilities are asserted as a consequence of the offense. This is exactly why he sought the Court's consent to his *nolo*

plea and this advantage is precisely what he received when his plea was accepted.

The second reason advanced by Fishbein is difficult to comprehend, but it is apparently based on the claim that he did not "understand the consequences of his plea." In connection with this ground, his present attorney, Albert L. Hutton, Jr.[11] stated to the Court that while the defendant understood that his *nolo* plea "was exactly the same as a plea of guilty for purposes of sentencing" (Tr. 6, 7)[12] he did not know that he was "admitting the allegations of the offense itself" (Tr. 6).[13]

When the defendant voluntarily took the stand at his counsel's request, he testified in answer to questioning by his counsel, Mr. Hutton:

"Q. What was said to you by Mr. Chisholm with respect to that plea that had anything to do with your entering a plea of *nolo,* for the Court's consideration?

"A. Mr. Chisholm advised me at the time that the term *nolo contendere* meant that I would be pleading guilty as far as the sentencing was concerned, but I wouldn't be pleading guilty to any of the charges as they were set forth.

"Q. By entering a plea of *nolo contendere,* did you understand that to mean that you were admitting the charges or any of the elements contained in those charges?

"A. Yes, sir.

"Q. You did not believe that was the effect of it?

"A. No. The—(Tr. 14–15)

\*    \*    \*    \*    \*    \*

---

11. Mr. Hutton was not retained by Fishbein until the day before sentence was scheduled to be imposed.

12. "Tr." refers to Transcript of the Proceedings on April 2, 1971 when the defendant moved to withdraw his *nolo* plea.

13. An express admission of guilt is not a constitutional requisite to the imposition of a criminal penalty even on a plea of "guilty". North Carolina v. Alford, supra, 400 U.S. at 37, 91 S.Ct. 160.

"Q. You pleaded *nolo contendere* to one count in the indictment; is that correct?

"A. Yes, sir.

"Q. All right. And you understood the words *nolo contendere* to mean that you don't contest, and you understood that it didn't mean that you were admitting the charges set forth?

"A. No, Mr. Chisholm told me that it wasn't an admission of guilt. It was only that as far as my sentencing would be concerned, that it would be as if I was guilty." (Tr. 19).

In the first place, the Court does not believe that this testimony is sufficient to require the Court, in the interest of fairness and justice, to permit the withdrawal of the *nolo* plea. From the Court's observation of the defendant during his several court appearances, it appears that he is a normally intelligent and mature forty-two year old man. These observations are supported by the pre-sentence report which indicates that the defendant is a high school graduate who completed three years of college at Brandeis University. He has been for the past twelve or fourteen years a salesman and office manager for an insurance agency in Massachusetts in which he apparently holds the controlling interest. Thus, we are not dealing here with an uneducated, unintelligent person but a man who is mentally alert and sophisticated in the business world.

But aside from this, the Court is convinced that the defendant was fully aware of the legal consequences of his *nolo* plea. At the time he changed his plea to *nolo contendere* to Count 2, he admitted that he understood that the Court could impose the same sentence on that plea as if he pleaded not guilty, stood trial and were convicted. He

further understood that by changing his plea he was waiving a jury trial, his right to produce evidence on his behalf, his right to confront witnesses and his right to the assistance of counsel at trial. In fact, he testified on April 2, 1971 that he understood the plea to mean that he "didn't contest" (Tr. 19), and that he could be sentenced just as if he had pleaded guilty (Tr. 15, 19). Obviously, this demonstrates his complete understanding of the consequences of his *nolo* plea. Fishbein's understanding exactly fits the United States Supreme Court's characterization of such a plea as one "by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." North Carolina v. Alford, supra, 400 U.S. at 35, 91 S.Ct. at 166.

The Court is also convinced that the defendant's present motion, coming as it does almost eighteen months after it was entered and immediately after his co-defendants were sentenced, is not taken in good faith. It appears to be an attempt to toy with the Court and hinder the efficient administration of criminal justice. Neither on the basis of fairness nor justice does the motion commend itself.

Further, it is manifest that the prosecution has been substantially prejudiced by reliance upon the defendant's *nolo* plea. We have the situation where on the day of sentencing,[14] the defendant suddenly, without prior notice to anyone, announces the desire to change a plea made on the morning of his trial, eighteen months before. The trial was a lengthy one, involving a large number of witnesses, most of whom live in other states far from the courthouse. The cost of the trial in money, time and effort was enormous. It is the opinion of the Court that under the present circumstances it

---

14. Fishbein's sentencing was deferred until completion of his co-defendant's trial and disposition of their post-trial motions. Fishbein's present motion was made only after sentence had been imposed on his co-defendants.

would amount to an abuse of discretion to permit the defendant to withdraw his intelligently made *nolo* plea and cause this complex case to be tried a second time. It would play havoc with the proper and efficient administration of justice and unnecessarily create further unjustified delays.

■ Finally, the fact that the defendant does not wish to admit his guilt other than for the purpose of sentencing is no reason to allow him to withdraw that plea now. Fishbein achieved his objective when his *nolo contendere* plea was accepted by the Court. As stated in North Carolina v. Alford, supra:

"Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence. (400 U.S. 36, 91 S.Ct. 167)

\* \* \* \* \* \*

"An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." (400 U.S. 37, 91 S.Ct. 167)

There is no doubt in this case, according to the defendant's own testimony, that at the time he entered his *nolo* plea, he was faced (a) with what appeared to be a lengthy trial (Tr. 7, 17), (b) with potentially substantial legal fees (Tr. 7, 17), (c) with domestic troubles with his wife (Tr. 7–8, 17); and (d) with a recurrence of pain from a war-received leg injury (Tr. 8, 17). More pertinently, the defendant was faced with possible convictions by the jury on ten counts of the indictment. With all of these motivating forces operating upon the defendant and with the advice of the counsel of his choice, Fishbein entered a *nolo* plea because, as he stated, it "would be the best thing for me to do", (Tr. 18). This leaves no question that his *nolo contendere* plea, when entered, was voluntarily, understandingly and knowingly made.