**UNITED STATES of America**

v.

**Lewis KATES** *.

**Civ. A. No. 75–151.**

United States District Court,
E. D. Pennsylvania.

June 30, 1976.

* Defendants: Edward Cavanaugh, Jack Simons, Leland Lamar, John Ammazzalorso, Sr., Hunting Park Moving & Storage Co., Inc., Stanley H. Salkowitz, Liberty Trucking Co., Jay Borowsky, Morton Borowsky, Monarch Storage Co., Sumerson Moving & Storage Co., Jack Albert, A & B Storage Co., Sydney Benjamin, Charles P. Benjamin Co., Samuel M. Niglio, and Daniel M. McAlinden Co., Inc.

Mark A. Cymrot, Dept. of Justice, Washington, D. C., for plaintiff.

Joseph R. Livesey, Louis W. Fryman, David Kanner, Gerald S. Segal, Jerome R. Richter, Ellis Cook, Robert S. Grodinsky, Wm. J. Brady, Jr., John Rogers Carroll, Stanley Bashman, Yale B. Bernstein, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This is a civil fraud action in which the government has moved for partial summary judgment asserting that prior criminal proceedings established the liability of certain defendants.[1] These defendants were either convicted of conspiracy to defraud the United States by rigging bids for services in connection with urban renewal projects or admitted their culpability at the criminal trials. For the reasons that follow, the government's motion will be granted.

The complaint in this matter is based on the False Claims Act, 31 U.S.C. § 231, common law conspiracy, and a theory of unjust enrichment. It charges that defendant moving companies, their principals, and officials of Philadelphia's Redevelopment Authority (RDA) submitted and procured false and inflated claims in connection with the relocation of displaced businesses. Pursuant to agreements between RDA and the Department of Housing and Urban Development (HUD), these claims were paid, in part at least, with federal funds.

■ To satisfy the dual requirements for summary judgment, lack of a genuine issue

---

1. The complaint originally named the eighteen defendants listed in the caption. Subsequently the Government entered into settlement agreements with defendants, Edward Cavanaugh, Jack Albert, A & B Storage Co., Jay Borowsky, Monarch Storage Co. and Sumerson Moving & Storage Co. and consent judgments were entered against these defendants. Of the remaining twelve defendants, the Government seeks partial summary judgment against all but Lewis Kates. By letter dated October 16, 1975, counsel for defendant Morton Borowsky advised the court that Mr. Borowsky would not interpose a defense to the Government's motion for partial summary judgment.

of material fact and entitlement to judgment as a matter of law,[2] the government relies on the results of antecedent criminal proceedings involving these same defendants and the same conspiracy, *United States v. Lewis Kates, et al.,* Crim. No. 73–151 (E.D.Pa.). In that case, defendants Jack Simons, Leland Lamar, Hunting Park Moving & Storage Co., Stanley Salkowitz and Liberty Trucking Co.[3] were convicted by a jury of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 through the submission of false and fraudulent moving claims to RDA.[4] John Ammazzalorso, who was charged in the same indictment, became ill during the criminal trial and was severed. He later pleaded *nolo contendere* to the indictment. Defendants Morton Borowsky, Sydney Benjamin and Samuel M. Niglio [5] were granted immunity from prosecution pursuant to 18 U.S.C. § 6001 et seq. and were required to testify against the other defendants.

The government advances two grounds in support of its motion for partial summary judgment. First, it contends that the defendants convicted in *United States v. Kates,* supra, are barred by the doctrine of collateral estoppel from contesting their liability in the instant suit. Secondly, the government argues that admissions made by the unconvicted defendants either directly (in the case of individuals) or through their principals (in the case of the entities) during testimony at the criminal trials supply the necessary prerequisites to summary judgment against them. Since these grounds are distinct, I will deal separately with each.

*I. The Convicted Defendants*

As noted, five of the defendants against whom summary judgment is sought were previously convicted of criminal conspiracy.

In *Oklahoma v. Texas,* 256 U.S. 70, 85, 41 S.Ct. 420, 422, 65 L.Ed. 831 (1921), the Supreme Court delineated the doctrine of collateral estoppel as follows:

> The general principle, applied in numerous decisions of this court . . . is, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties *sui juris* is conclusively settled by the final judgment or decree therein so that it cannot be further litigated in a subsequent suit between the same parties or their privies whether the second suit be for the same or a different cause of action.

There can be no question that this doctrine in general applies to decisions in both civil and criminal proceedings, see *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); *Local 167, etc., Teamsters, etc., v. United States,* 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934), and in particular applies in suits brought under the False Claims Act to preclude relitigation of matters previously determined by a criminal conviction, see *Sell v. United States,* 336 F.2d 467 (10th Cir. 1964); *United States v. Zulli,* 418 F.Supp. 252 (E.D.Pa. filed Oct. 2, 1975); *United States v. Levinson,* 369 F.Supp. 575 (E.D.Mich.1973); *United States v. American Precision Products Corp.,* 115

---

**2.** Fed.R.Civ.Proc. 56(c). See generally 6 Moore's Federal Practice §§ 56.09–56.23 (1974).

**3.** Hereinafter, these defendants will sometimes be referred to as the "convicted defendants." The jury which convicted these defendants could not reach a verdict as to Lewis Kates, who had also been indicted in Crim. No. 73–151. Kates was re-tried and convicted but his conviction was subsequently reversed by the Court of Appeals for the Third Circuit. *United States v. Kates,* 508 F.2d 308 (1975). That court concluded that there was insufficient evidence to link Kates to the main conspiracy.

**4.** The one-count indictment which was returned on March 14, 1973, alleged that the conspiracy lasted from on or about April 27, 1965, until on or about May 15, 1972.

**5.** Hereinafter, John Ammazzalorso, Morton Borowsky, Sydney Benjamin, Charles Benjamin Co., Samuel Niglio and Daniel J. McAlinden Co. will sometimes be referred to as the "unconvicted defendants."

F.Supp. 823 (D.N.J.1953). The task in each case is to determine precisely from "an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts" what "questions [were] 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors,* supra, 340 U.S. at 569, 71 S.Ct. at 414, quoting *Frank v. Mangum,* 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969 (1915); see *Williams v. Liberty,* 461 F.2d 325, 327 (7th Cir. 1972).

■ An examination of the entire record in *United States v. Kates,* supra, reveals that the conspiracy for which these five defendants were convicted is the same conspiracy charged here. Their convictions, therefore, amount to a final judgment that they *entered into* the unlawful scheme described by the present complaint. Essential to an understanding of this conspiracy is an appreciation of the workings of the relevant RDA relocation program. From 1965 through 1972,[6] certain parts of the City of Philadelphia were designated as urban renewal areas and placed under the jurisdiction of RDA. Plaintiff, acting through HUD and pursuant to statutory authority, provided financial assistance to implement renewal projects in these areas by entering into "Loan and Capital Grant" agreements with RDA. In carrying out various urban renewal projects, RDA condemned certain commercial properties in the designated areas. Pursuant to the agreements with HUD, RDA was required to reimburse condemned businesses for their actual expenses incurred in relocating. In order to assure competitive bidding, HUD regulations required that at least fifteen days prior to the move the condemnee obtain and submit to RDA bids from three separate movers covering the actual cost of the move. RDA then had the option of soliciting a fourth bid from a mover of its choice. The condemnee could select the mover to be used, but RDA would pay no more than the lowest bid or the mover's actual costs, whichever was less. All claims for reimbursement had to be accompanied by appropriate invoices and other documentary proof. RDA employed inspectors whose job it was to conduct periodic on-site inspections to insure that the movers were in fact employing the men, trucks and other equipment during the times claimed.

The operation of the conspiracy has been succinctly stated by the Court of Appeals:

When one of the conspiring movers desired a particular job, he would determine what his own estimate would be and would then contact two other movers in the conspiracy and ask them to submit "courtesy bids" higher than his so that he would be the low bidder. When he learned that RDA would solicit a fourth bid, he would ask that mover to submit an inflated bid also. Often, he would pay a cash bribe, equal to ten percent of the estimated cost, to Edward Cavanaugh, RDA's Deputy Director of Commercial Relocation, so that the latter would select one of the conspirators as the fourth bidder. The mover who obtained this particular contract would reciprocate by submitting "courtesy bids" on contracts sought by other conspiring movers. He would also make further cash payments of five percent each to two RDA inspectors, Jack Simons and Leland Lamar, so that he could inflate his costs to bring them up to the estimate.

*United States v. Kates,* supra, 508 F.2d at 309–10.

6. The False Claims Act contains a six year statute of limitations, 31 U.S.C. § 235, and the applicable statute for the common law conspiracy count is the six year statute of limitations contained in 28 U.S.C. § 2415(b) for recovery of money diverted from a grant program. Section 235 provides that the limitation period runs from the commission of the "act" while Section 2415(b) provides that it runs from the date the cause of action "accrues." A potential legal issue in this case might have involved the ascertainment of the meaning of these terms in the conspiracy situation. Fortunately, the Government has taken the position that it will not seek recovery from the defendants *even under the conspiracy counts of the complaint,* for false claims submitted more than six years prior to the filing of the complaint. See Brief for the Government at 21. I therefore have no occasion to consider this issue.

■ Since both the criminal and these civil proceedings involve the same conspiracy, the jury's verdict of guilty conclusively establishes all of the factual issues as to the liability of the convicted defendants under the False Claims Act conspiracy count of the complaint, Count I. The prior conviction does not, however, conclusively establish the defendants' liability under the common law conspiracy count. The reason for the distinction is this: To find the convicted defendants guilty of a criminal conspiracy in violation of 18 U.S.C. § 371 the jury necessarily had to find only that they *entered into* the unlawful agreement and that some overt act, not necessarily in itself harmful to the government, was committed in furtherance of the conspiracy.[7] In short, the conviction under Section 371 did not require proof that the conspiracy had ever been effectuated or that the government had suffered any actual damages. The third clause of the False Claims Act provides in relevant part:

> Any person . . . who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining ·or aiding to obtain the payment or allowance of any false or fraudulent claim . . . [shall be liable].

31 U.S.C. § 231. There is no requirement in the above language of proof that any false or fraudulent moving claims were actually submitted to or paid by the government. Thus, like Section 371, the False Claims Act proscribes the conspiracy itself, regardless of whether or not it was ever effectuated.[8] See *United States v. Ben Grunstein & Sons Co.,* 127 F.Supp. 907, 912 (D.N.J.1955). Mere establishment of the existence of the conspiracy—here accomplished by the jury's verdict—without proof of damages entitles the United States to recover the $2,000. forfeiture provided for in the Act, *United States v. Rohleder,* 157 F.2d 126, 129 (3d Cir. 1946); *United States v. American Precision Products Corp.,* supra, 115 F.Supp. at 827–28; cf. *Fleming v. United States,* 336 F.2d 475 (10th Cir.) cert. denied 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1964); *Toepleman v. United States,* 263 F.2d 697 (4th Cir.), cert. denied sub. nom. *Cato Bros., Inc. v. United States,* 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959); *United States v. Tieger,* 234 F.2d 589 (3d Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237 (1956), and would also seem to allow the recovery of double damages, *United States v. Ben Grunstein & Sons Co.,* supra, 127

---

**7.** See Judge Newcomer's charge to the jury in *United States v. Kates,* Crim. No. 73–151, N.T.₁ 2313–2350 particularly at 2328–30, 2333–38. N.T.₁ refers to the notes of testimony of the first trial which was held from June 25 through July 17, 1973. N.T.₂ will refer to the notes of testimony of Kates' second trial which was held from April 8, 1974, through April 23, 1974.

**8.** In *United States v. Guzzone,* 273 F.2d 121 (2d Cir. 1959), the court held that the defendants' plea of guilty to a criminal conspiracy did not conclusively establish their civil liability for nine *substantive* violations of the False Claims Act which corresponded to the nine overt acts charged in the criminal indictment. The court reasoned that the guilty pleas to the conspiracy did not establish the defendants' "guilt for every overt act set forth in the indictment" *Id.* at 123. I thoroughly agree with the *Guzzone* court's reasoning. Here, however, the government has not sought to establish conclusively the civil liability of the convicted defendants for substantive violations of the False Claims Act, but only for conspiracy to violate the Act. Since, as noted in the text, the Act imposes civil liability for the conspiracy itself and since the criminal conviction established the existence of the conspiracy, the government is entitled to summary judgment on count I of the complaint. This distinction between substantive and conspiracy violations under the False Claims Act was recognized by the courts in *United States v. Ben Grunstein & Sons Co.,* supra, 127 F.Supp. at 911–12 and *United States v. American Precision Products Corp.,* supra, 115 F.Supp. at 826. Both cases held that a prior plea of guilty to a criminal conspiracy conclusively established the defendants civil liability to a conspiracy claim under the False Claims Act. *United States v. American Packing Corp.,* 113 F.Supp. 223 (D.N.J.1953), in which the court refused to grant summary judgment for the government under the Act following the defendants' guilty pleas to a criminal conspiracy, is distinguishable in that the civil complaint did not allege a single conspiracy as had the criminal indictment, but rather was drafted so as to allege a separate conspiracy with respect to each substantive violation.

F.Supp. at 912, even if the latter were only nominal in amount, cf. *United States v. Collyer Insulated Wire Co.,* 94 F.Supp. 493 (D.R.I.1950).[9]

██ On the other hand, actual legal damages must result in order for a common law conspiracy to be actionable. *Daly v. Bright,* 345 F.Supp. 11, 14 (E.D.Pa.1972); *Vant v. Gish,* 412 Pa. 359, 365–66, 194 A.2d 522 (1963); *Helmig v. Rockwell Manufacturing Co.,* 389 Pa. 21, 35, 131 A.2d 622, 629, cert. denied 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44, reh. denied, 355 U.S. 885, 78 S.Ct. 146, 2 L.Ed.2d 115 (1957); *Baker v. Rangos,* 229 Pa.Super. 333, 324 A.2d 498, 506 (1974). Since the jury in the criminal case could have found the convicted defendants guilty of conspiracy without finding that any false claims had actually been submitted or paid or that the government suffered any actual loss, it follows that material factual issues concerning damages are yet to be resolved with respect to the common law conspiracy count of the complaint. Summary judgment as to this count, Count XII, is therefore inappropriate.

The convicted defendants[10] raise a number of points in opposition to summary judgment, all of which may be disposed of quickly. First, it is asserted that this motion is, in reality, one to have the court determine that the entire transcript of the criminal trials is admissible in evidence in these proceedings. Contending that it is entitled to a jury trial on the issue of liability, these defendants argue that "to deny [the same] . . . and to establish [liability] by virtue of the introduction of the entire criminal transcript would be violative of . . . due process of law . . . ."

Brief for John Ammazzolorso and Hunting Park Moving & Storage Co. at 3–4. Not surprisingly, no authority is cited in support of these contentions. In fact, such arguments reflect a total misconception of the nature of the government's motion, which is for summary judgment and has absolutely nothing to do with the admissibility of evidence. The defendants' liability under Count I of the instant complaint is conclusively established by the judgment of conviction in the criminal proceeding. There is no need to determine what evidence would be admissible on the question of the convicted defendants' liability because they simply are not entitled to relitigate that issue at all.

None of the convicted defendants have identified under Count I any disputed issue of fact as to liability not conclusively determined by their criminal conviction. By nonetheless arguing that the due process and jury trial provisions of the Constitution require that they be afforded a jury trial on the issue of liability, these defendants are really attacking the doctrine of collateral estoppel itself. This doctrine is too well established as a fundamental principle in our common law jurisprudence for any such attack to be sustained.

██ Next, the convicted defendants argue that the False Claims Act is penal in nature and that subjecting them to the Act's forfeiture and double damages provisions following their criminal conviction violates the double jeopardy clause of the fifth amendment.[11] This—and another of their arguments—that there was no violation of the False Claims Act because the claims were submitted to RDA and not

9. In *Collyer* the court assessed double nominal damages because a specific amount of actual damages could not be proved and any attempt at assessing actual damages would have involved mere speculation and guesswork. 94 F.Supp. at 498–99.

10. Of the convicted defendants only Hunting Park filed a written response to the government's motion. By letter of May 8, 1975, counsel for Simon and Lamar joined in Hunting Park's response. At oral argument the court was advised by counsel for Hunting Park that

counsel for Liberty Trucking and Stanley Salkowitz was unable to attend but wished to join in his arguments.

11. They also assert that subjecting them to liability under the False Claims Act following their criminal conviction violates the due process clause of the fifth amendment, but again they offer no specific theory or supporting authority, in the absence of which I reject this contention.

directly to a federal agency—were specifically rejected by the Supreme Court in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). See also *Rex Trailer Company v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

 Yet another contention is that there exists a material factual issue in this case that was not relevant in the criminal proceedings, namely, "whether the conduct of [the Government's agents] contributed to the loss and precludes recovery thereof." Brief for John Ammazzalorso and Hunting Park Moving and Storage Co. at 5. The defendants offer no factual support for this contention so that I am not at all sure exactly to which conduct they are referring. In any event, there are three answers to this assertion. First, the False Claims Act provides a remedy for conduct in the nature of common law fraud, which is an intentional tort, cf. *United States v. Cooperative Grain & Supply Co.,* 476 F.2d 47 (8th Cir. 1973); *United States v. Aerodex, Inc.,* 469 F.2d 1003 (5th Cir. 1972); *United States v. Fox Lake State Bank,* 225 F.Supp. 723 (N.D.Ill.1963), and contributory negligence would be no defense, *Restatement (Second) of Torts* § 481. Secondly, to the extent that the "conduct" complained of as contributing to the loss refers to the conduct of the RDA employees, Cavanaugh, Simon and Lamar, the defendants have offered nothing to show that these individuals were agents of HUD, see *Housing Corporation of America v. United States,* 468 F.2d 922, 924, 199 Ct.Cl. 705 (1972) and even if they were, the government would not be precluded from recovery by their unauthorized conduct, *id.* at 925; *Fox Lake,* supra, 225 F.Supp. at 724. Lastly, to the extent that these defendants would rely on conduct other than negligence or acts of government agents other than Cavanaugh, Simon or Lamar, they had an obligation under Rule 56(e) to come forward with specific facts showing the existence of such conduct or agents. They have not done so.

 The final assertion of the convicted defendants is that summary judgment based on the prior criminal proceedings is inappropriate because those proceedings did not establish precisely when the conspiracy began or how long it continued or for what period each of the convicted defendants was a member of it. These facts are important, according to these defendants, because each defendant's liability for damages would exist only during the time he was a member of the conspiracy. While I agree that the criminal proceeding did not necessarily establish the precise period during which each of the convicted defendants was a member of the conspiracy, it does not follow that summary judgment as to *liability* under Count I of the complaint is inappropriate. As noted previously, the False Claims Act proscribes the conspiracy itself and provides by way of remedy a $2000. forfeiture [12] plus double damages. Since the criminal proceedings conclusively established that each of the convicted defendants participated in the conspiracy at some point, each is clearly *liable* under the Act for both the forfeiture and damages. However, since it is unlikely that the government suffered any loss from the unlawful agreement itself, in order to recover anything more than double nominal damages [13] the government will most likely need to prove that false or fraudulent claims were actually submitted and paid. Under familiar principles, each conspirator would be jointly and severally liable for all loss suffered by reason of false or fraudulent claims submitted by any conspirator during the course of the conspiracy unless and until he had effectively withdrawn from it. 15A C.J.S. *Conspiracy* §§ 18–19; see, e. g., *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1343

---

**12.** Because it relates to damages, I need not now decide the issue of whether under the conspiracy clause of the Act each conspirator would be jointly and severally liable for a single $2000. forfeiture, or a total forfeiture of $2000. multiplied by the number of conspirators. A third possibility, of course, would be individual liability on the part of each conspirator for $2000. My research reveals that no court has as yet addressed this issue.

**13.** See note 9 supra and accompanying text.

(9th Cir. 1970); *Baughman v. Cooper-Jarrett, Inc.*, 391 F.Supp. 671, 678–79 (W.D.Pa. 1975). Thus, proof of the extent and duration of each defendant's participation in the conspiracy, though clearly relevant to the question of the amount of damages he must pay, has no bearing on the issue of liability.

## II. *The Unconvicted Defendants*

 Each of the individual unconvicted defendants testified at least once during the course of the two criminal trials in *United States v. Kates*, Crim. No. 73–151 (E.D.Pa.). The government contends that during his testimony each of these defendants admitted all material facts necessary under Counts I and XII of this complaint to establish both his own liability and the liability of his company. In considering the government's position, I note first that Rule 56(c) provides that on a motion for summary judgment the court may consider, *inter alia*, "admissions on file." While it is not entirely clear whether the transcripts of the unconvicted defendants' prior testimony which contain the admissions are "on file" [14] in the instant case, this technicality need not detain me since it is well established that in ruling on a summary judgment motion a court may take judicial notice of its own records and files. *United States v. Webber*, 396 F.2d 381, 386–87 (3d Cir. 1968); accord *United States v. City of Philadelphia*, 140 F.2d 406 (3d Cir. 1944); *Fletcher v. Bryan*, 175 F.2d 716 (4th Cir. 1949). With this in mind, I have carefully reviewed all of the testimony given by Samuel Niglo, Sydney Benjamin, John Ammazzalorso and Morton Borowsky at the criminal trials. It clearly establishes that they and the companies of which they were principals participated in the conspiracy charged in Count I of the complaint.[15] This testimony also establishes the liability of the unconvicted defendants under Count XII of the complaint, since it contains admission that they did in fact submit false or fraudulent claims,[16] thus satisfying the common law requirement of actual damage to the government. The unconvicted defendants do not dispute that this testimony establishes their participation in the conspiracy. Rather, they each raise a number of what can only be termed "collateral" arguments in opposition to summary judgment.

 Ammazzalorso's first contention is based on a misunderstanding of the basis of the government's summary judgment motion. Contrary to what he may believe, the government does not rely on his plea of *nolo contendere* to the criminal indictment to establish his civil liability. To do so would be patently impermissible.[17] Instead as just noted, the government relies on the testimony he gave at the criminal trials. Next Ammazzalorso contends, as did the convicted defendants, that the instant motion seeks in violation of the due process and jury trial provisions of the Constitution a pre-trial judicial determination that the entire transcript of the criminal trials is admissible in evidence against him. As I noted earlier, the instant motion has nothing to do with the admissibility of evidence. While, unlike those who were convicted, Ammazzalorso is not precluded from contesting his liability, if he wished to do so he had an obligation under Rule 56(e) to specify by affidavit or otherwise those facts which were in dispute. 6 *Moore's Federal Practice* § 56.22[2] (1976). Having failed to do so, he is not entitled to a jury trial on that issue. *Fidelity & Deposit Co. of Maryland v. United States*, 187 U.S. 315, 320, 23 S.Ct. 120, 122, 47 L.Ed. 194 (1902); see

---

**14.** Although the government makes numerous references to the transcripts of the criminal trials in its brief, they were never formally introduced in these proceedings as attachments to the government's motion or brief. See 6 *Moore's Federal Practice* § 56.11[6], at pp. 286–87 (1976).

**15.** See N.T.$_1$ 1072–1287; N.T.$_2$ 490–596 (Morton Borowsky); N.T.$_1$ 1466–1549; N.T.$_2$ 71–175

(Niglio); N.T.$_2$ 596–706 (Benjamin); N.T.$_2$ 923–963, 976–978 (Ammazzalorso).

**16.** See note 15 supra.

**17.** See, e. g., *United States v. Wolfson*, 52 F.R.D. 170, 176 (D.Del.1971), aff'd, 474 F.2d 1340 (3d Cir. 1973).

*Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 564–565 (3d Cir. 1976). The remaining arguments advanced by Ammazzalorso do not depend on his status as a convicted or unconvicted defendant, and since considered and rejected previously with respect to the convicted defendants, they need not be discussed further here.

■ Defendants Niglio and Daniel J. McAlinden Co. raise two issues which require some comment.[18] First McAlinden contends that Niglio had no authority to act in behalf of the corporation and therefore that his acts cannot bind it. Contrary to the provisions of Rule 56(e), this assertion is merely a repetition of the general denial of liability contained in McAlinden's answer to the complaint and contains no specifications of the facts which it claims are in dispute. Such a general allegation is insufficient to preclude summary judgment particularly in view of the fact that at the criminal trial Niglio testified that he was the president of Daniel J. McAlinden Co.[19] *Jamison v. Miracle Mile Rambler*, supra; *Lockhart v. Hoenstine*, 411 F.2d 455, 458–59 (3d Cir.) cert. denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *Robin Construction Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965); *Moore's* supra, § 56.22[2].

■ Niglio and McAlinden also contend that summary judgment is inappropriate because the government failed to join an indispensable party. Although the response to the motion does not identify this indispensable party, from Niglio's and McAlinden's answer to the complaint it appears that they are referring to George Bernstein and the Quaker Transit Co., who, although named as co-conspirators in the indictment, were not joined as parties because they settled prior to the institution of this suit. At most Bernstein and Quaker Transit are joint tortfeasors, and as such, they are not indispensable parties. *State of Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 463, 65 S.Ct. 716, 729, 89 L.Ed. 1051 (1945); *Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970); *Breweris v. Glaznaws*, Civil Action Nos. 74–1788, 75–518 (E.D.Pa. filed May 11, 1976).

■ Not to be outdone by their cohorts, Sydney Benjamin and Charles Benjamin Company mount a plethora of arguments against summary judgment. Their first so-called "defense" is based on the fact that through an oversight, the complaint named as a defendant the "Charles P. Benjamin Co."[20] (Emphasis added). It appears that there is no such entity. Although the record is not entirely clear, apparently the companies with which Sydney Benjamin is associated are known as "Charles Benjamin Company," "Benjamin Warehouse Company" and "Charles Benjamin, Inc." Benjamin Warehouse Company is a division of Charles Benjamin Company, a partnership of which Sydney Benjamin is a partner, and Charles Benjamin, Inc. is a corporation of which Sydney Benjamin is president. The government asserts that it has always intended to sue Charles Benjamin Company, the partnership, and it is undisputed that that entity was served and has been represented in these proceedings. Under these circumstances the addition of the initial "P" to the partnership name is a mere misnomer and of no consequence. As the Court in *United States v. A. H. Fischer Lumber Co.*, 162 F.2d 872 (4th Cir. 1947) observed in a related context:

A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and

---

18. A third contention—that summary judgment is precluded because of the government's contributory negligence—is rejected for the same reasons as discussed earlier in response to the convicted defendants' advancement of the same argument.

19. N.T., at 1466–67.

20. The criminal indictment first named the "Charles P. Benjamin Company" as an unindicted co-conspirator. Later in the overt act section, the indictment refers to acts committed by "Charles B. Benjamin, Inc."

courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*Id.* at 873; see *Shapiro v. Paramount Film Dist. Corp.*, 274 F.2d 743, 746 (3d Cir. 1960); *Boatman v. Thomas*, 320 F.Supp. 1079 (M.D. Pa.1971). A contention with slightly more substance is that at the criminal trial Sydney Benjamin never indicated whether he was working for the corporation or the partnership in carrying out the acts about which he testified. If this were ever a problem for the government, which I do not believe it was,[21] counsel for Sydney Benjamin and Charles Benjamin Company alleviated it at oral argument when he admitted that only the partnership was performing moves in connection with the redevelopment program.[22] Therefore, Sydney Benjamin's testimony at the criminal trial related to acts done in behalf of the partnership, Charles Benjamin Company. Counsel's admission coupled with the undisputed fact that Sydney Benjamin was a partner of Charles Benjamin Company also requires that the latter's assertion of Sydney Benjamin's lack of authority to bind the partnership to liability for the conspiracy be rejected. As noted earlier, such broad, conclusory denials do not measure up to the requirements of Rule 56(e) that the facts which are disputed be specifically set forth. See *Jamison v. Miracle Mile Rambler, Inc.*, supra;

*Lockhart v. Hoenstine*, supra; *Robin Construction Co. v. United States*, supra.

Sydney Benjamin and Charles Benjamin Company next claim that the Court of Appeals' reversal of Kates' conviction somehow precludes the entry of summary judgment against them. However, the conclusion of the Court of Appeals that there was insufficient evidence to link Kates to the main conspiracy in no way affects the status of the instant motion, which is based on Sydney Benjamin's testimonial admissions that he and Charles Benjamin Company did participate in that conspiracy.

Finally, Benjamin[23] raises a two-pronged defense to the government's motion based on the fact that he was granted immunity pursuant to 18 U.S.C. § 6001 et seq. in return for his testimony in the criminal proceedings. First, it is contended that the grant of such immunity in itself precludes the use of Benjamin's testimony at the criminal trial to establish his liability in this suit. The simple answer to this contention is that the instant suit is a civil proceeding, *United States ex rel. Marcus v. Hess*, supra, 317 U.S. at 548–52, 63 S.Ct. at 386–88, and the use immunity granted by 18 U.S.C. § 6002,[24] being coextensive with the privilege against self-incrimination, *Kastigar v. United States*, 406 U.S. 441, 461, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972), may be invoked only against criminal pro-

**21.** See Mr. Goldberg's cross-examination of Sydney Benjamin, N.T.2 at 628–29, 644, 647, which, although inconsistent with Benjamin's brief in opposition to the instant motion regarding the relationship between the various entities, seems to make it clear that it was the partnership that was performing RDA moves and making payoffs.

**22.** N.T. of oral argument, Nov. 3, 1975, at 24–25.

**23.** Although pressed most vigorously by Benjamin, this line of attack was also alluded to in the briefs of Niglio/McAlinden and Ammazzalorso/Hunting Park. I reject their arguments in this regard for the same reasons I reject Benjamin's.

**24.** 18 U.S.C. § 6002. Immunity generally
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testi-

fy or provide other information in a proceeding before or ancillary to—
(1) a court or grand jury of the United States,
(2) an agency of the United States, or
(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any *criminal* case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. (Emphasis added.)

ceedings. *United States v. Cappetto*, 502 F.2d 1351, 1359 (7th Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975).

 The second prong on this attack is Benjamin's claim that the government, though not required to do so, *Kastigar*, supra, did in fact grant him immunity broader in scope than that provided in Section 6002. Specifically, Benjamin asserts that Malcolm Lazin, the Assistant United States Attorney handling the criminal prosecution, promised him that if he "accepted" the grant of immunity and testified for the government, neither he, nor his partners, nor any of the companies he was employed by, would be liable to the federal government for any claims arising out of the conspiracy except civil tax liability claims.[25] Recognizing that I must accept this specific factual allegation as true, the government responds that it raises no material factual issue that would preclude summary judgment. The government's reasoning is that even if Mr. Lazin made the claimed representations, he had no authority to do so and the United States is not bound by his unauthorized acts. My review of the law reveals that the government's position is correct.

 As an Assistant United States Attorney, Mr. Lazin had absolutely no authority to compromise a civil claim of the United States.[26] In *United States v. Beebe*, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901), the Supreme Court held that the United States was not bound by the unauthorized settlement of a claim by a United States Attorney. This principle—that the United States is not bound by the unauthorized acts of its agents—has been repeated again and again in later cases. See e. g., *Jeems Bayou Fishing & Hunting Club v. United States*, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1922); *Wilber National Bank v. United States*, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798 (1935); *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Dorl v. C. I. R.*, 507 F.2d 406 (2d Cir. 1974); *United States v. Quickee Food Products, Inc.*, 396 F.2d 450 (3d Cir. 1968); *In re Hooper's Estate*, 359 F.2d 569 (3d Cir.) cert. denied *sub. nom.*, *Marine Nat'l Exchange Bank v. Government of the Virgin Islands*, 385 U.S. 903, 87 S.Ct. 206, 17 L.Ed.2d 133 (1966); *Brubaker v. United States*, 342 F.2d 655 (7th Cir. 1965). Thus, whether or not Mr. Lazin made the purported agreement, the government is not estopped from seeking recovery against Benjamin under the False Claims Act.

### III. *Conclusion*

For the reasons set forth above, I conclude that summary judgment for the government as to the issue of liability must be granted against the convicted defendants, Stanley Salkowitz, Liberty Trucking Company, Hunting Park Moving & Storage Co., Jack Simons, and Leland Lamar on Count I of the complaint and against the unconvicted defendants, Sydney Benjamin, Charles Benjamin Company, Samuel M. Niglio, Daniel J. McAlinden Company, Inc., Morton Borowsky and John Ammazzalorso, Sr. on Counts I and XII of the complaint.

---

25. Affidavit of Sydney Benjamin, paragraphs 4–6. It seems somewhat unusual that a government prosecutor would make such an agreement, since Benjamin clearly would have no choice to accept or reject a grant of immunity under Section 6002. See, e. g. *United States v. Mandujano*, 425 U.S. 564, 576, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). Nonetheless, this is a specific factual allegation which meets the requirements of Rule 56(e) and I accept it as true.

26. In 28 C.F.R. §§ 0.45, 0.160, the Attorney General delegated the authority to compromise civil claims in behalf of the United States to the Assistant Attorney General in charge of the Civil Division of the Department of Justice. By Memorandum No. 374 the latter in turn has delegated the authority to compromise certain fraud claims not exceeding $10,000. to the several United States Attorneys. Section 1 of this memorandum specifically prohibits any redelegation of this authority except in circumstances not here relevant.

No claim is made that the purported agreement made by Mr. Lazin was authorized by the United States Attorney for this district or the Assistant Attorney General in charge of the Civil Division.