# UNITED STATES *v.* BEEBE.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH
CIRCUIT.

No. 71. Argued November 6, 7, 1900.—Decided February 25, 1901.

It is entirely plain that there was no fraud in this case, and therefore this ground for the complainant's relief cannot be sustained.

A district attorney of the United States has no power to agree upon a compromise of a claim of the United States in suit, except under circumstances not presented in this case.

An attorney, by virtue of his general retainer only, has no power to compromise his client's claim; and a judgment entered on a compromise made under such circumstances, is subject to be set aside on the 'ground of the lack of authority in the attorney to make the compromise on which the judgment rests.

Generally speaking the laches of officers of the Government cannot be set up as a defence to a claim made by the Government.

When an agent has acted without authority, and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken.

On the tenth day of March, 1890, the United States brought suit in the Circuit Court of the United States for the Middle District of Alabama, against Eugene Beebe and the heirs at law of one Ferris Henshaw, deceased, praying that two separate judgments in favor of the United States (one against Beebe and the other against the administrator of Henshaw) should be set aside and vacated; for the removal of the administration of the estate of Henshaw into that court; for an accounting by Beebe and the other defendants by reason of the liability of Beebe and Henshaw on the bond of Francis Widmer, late collector of internal revenue in the second district of Alabama, and that the amount found due on the accounting should be made a prior lien on the land described in the bill, and for other relief.

The defendants demurred to the bill and the court sustained the same, after which the bill was amended and again demurred

to.  The defendant Beebe died August 24, 1894, and the complainant revived the suit against his heirs at law, and subsequently the court sustained the demurrers to the amended bill, and the judgment dismissing the bill was upon appeal affirmed by the Circuit Court of Appeals for the Fifth Circuit, and from that judgment of affirmance the United States has appealed to this court.

The following facts were set forth in the bill: Some time in 1873 one Francis Widmer was appointed collector of internal revenue for the second district of Alabama, and Eugene Beebe and Ferris Henshaw became sureties on his bond in the sum of fifty thousand dollars.  Widmer defaulted and failed to account for and pay over to the Government the sum of $28,158.56 public moneys that had come into his hands as collector, which sum was due the United States, with interest thereon from January 1, 1874.  Beebe and Henshaw had for many years been partners in business, and were joint owners in fee of certain real estate described in the bill and situated in the county of Montgomery and State of Alabama.  Henshaw died there, intestate, April 19, 1879, leaving certain of the defendants named in the suit as his heirs at law.  The administrator of the estate of Henshaw reported to the court that his estate was insolvent, and in accordance with that report the estate was on July 2, 1880, declared to be insolvent, and no settlement of the estate has since been had.  Beebe before and since July 2, 1880, was and has been insolvent, without sufficient property to pay his debts.  Ferris Henshaw was also insolvent at the time of his death.  By reason of the insolvency of Eugene Beebe and Ferris Henshaw and the insolvency of the latter's estate the United States became and was entitled to priority of payment over any and all other creditors of Beebe and Henshaw out of their property and estate, of the full amount collected, withheld and appropriated by Widmer, the collector, and due to the United States.  It is averred that the land above described is liable for such debt, and also that the complainant has a prior lien upon it therefor.

On June 3, 1880, separate actions in the Circuit Court of the United States for the Middle District of Alabama were commenced, one against Beebe and the other against the adminis-

trator of the estate of Henshaw, for the recovery of the sums for which Widmer, collector, was in default, and amounting, as stated, to over $28,000, with interest, and those suits were continued from time to time, at the request of the defendants, until February 6, 1885, when judgments were severally entered in that court against Beebe, and also against Hatchett, as administrator of Henshaw, for $100 and costs, and Beebe on July 1, 1886, paid into the Treasury of the United States the sum of $109.85 as the amount of the judgment and costs rendered against him, but the judgment against Hatchett, as administrator, remained unsatisfied to the date of the filing of the bill in this suit.

The bill then proceeds as follows:

" That said judgments were entered under the following circumstances: That said defendants came into court, and stated and represented in open court, and they caused to be stated and represented for them, that said Beebe and said Ferris Henshaw were poor men, and that said Beebe· and the estate of Ferris Henshaw were without property out of which the said judgments could be paid and collected; that no part of said judgments could be collected by due process of law; that nothing could be made out of them, or either of them, or their estates, by execution, but that if the court would allow a jury and verdict to be entered against them for one hundred dollars they, and each of them, would pay said judgments and costs; that no evidence or proof was or had been introduced in said causes, or either of them; the indebtedness of said Beebe and Henshaw to the United States then being twenty-eight thousand one hundred and fifty-eight dollars and fifty-six cents ($28,158.56), and interest, or other large sum; and the statements and representations aforesaid only were before the said Circuit Court at time of the entry of said judgments; and no hearing or determination upon the law or the facts involved in said cases was ever had in said court; whereupon the court remarked that unless the district attorney of the United States objected, the causes might be disposed of as suggested aforesaid; said district attorney did not object, and said judgments for one hundred dollars and costs were entered in each of said causes.   And orator

avers and charges that said statements and representations made as aforesaid by and on behalf of, and for, said Beebe and said Ferris Henshaw, and the estate of said Ferris Henshaw, were wholly untrue, and were made to deceive said court and United States attorney, and for the purpose and with the intent to defraud the United States. Orator further avers and charges that said court and United States attorney had no authority in law to accept said statements and representations, which were not made under oath nor in the course of any judicial proceeding, and were not supported nor verified by evidence or proofs; and that said acts of said court and United States attorney amounted in law and in fact to, and was, and was intended to be, a mere naked compromise of the claim and demand of the United States against said Eugene Beebe and Ferris Henshaw, and the estate of said Ferris Henshaw, which said court and the United States attorney had no authority, but were inhibited by law, to make, entertain and consummate; that said court was without jurisdiction and power to determine said causes in the manner aforesaid; and that said alleged judgments for one hundred dollars and costs are null and void *ab initio*, and of no effect, and should be vacated and held for naught in this court of equity." .

The bill then asks for the appointment of an administrator *ad litem* of the Henshaw estate to represent it in the proceeding. It alleges that several of the defendants, naming them, assert some claim against the property described in the bill, which claims are alleged to be subordinate to the rights of the United States to condemn and subject the land already mentioned to the satisfaction of the indebtedness of Beebe and Henshaw as sureties on the bond of Widmer, as collector, by reason of the default of the latter; and it is alleged that if any conveyance of the land has been made by Beebe or Henshaw, or the heirs of the latter, such conveyances were void and ought to be vacated and set aside. It is further stated that the facts and circumstances set out in the bill as the basis of the relief asked for only recently came to the knowledge of the complainant, to wit, on or about March 5, 1890. The bill also set forth that on March 22, 1877, Beebe conveyed by deed to Ferris

Henshaw, then his partner in business, all his interest and estate in the property described in the bill for certain purposes therein set forth, and this deed complainant alleges was without consideration and fraudulently made to hinder, delay and defraud the existing creditors of Beebe and was void, and all the property described in the bill was bound even in the hands of the heirs at law of Henshaw for the payment of the debts due the United States from Beebe. The complainant prayed that the judgments might be set aside and vacated, and the property sold and the proceeds thereof applied to the payment of the debts above mentioned.

The defendants severally demurred to the bill on various grounds, (1) for want of equity; (2) that the bill showed that the matters complained of against Beebe and Henshaw, by reason of their being sureties for Widmer, the collector, had been adjudicated in the Circuit Court of the United States for the Middle District of Alabama, in a suit commenced by the complainant against them, and that no sufficient ground was shown for vacating and setting aside the judgments therein rendered; (3) that it appeared from the allegations in the bill that the judgment against Beebe had been paid by him, and had been received and accepted by the complainant, the United States, and the bill contained no offer to refund the money, and it does not show that the same had ever been tendered to Beebe. Other grounds were stated in the demurrers.

Upon the hearing the court sustained the demurrers and granted leave to amend the bill. On January 5, 1891, the complainant amended its bill, the amendment alleging that Beebe had executed another official bond as surety for one Dustan, deputy postmaster at Demopolis, Alabama; that a default had occurred and judgment been recovered against Beebe for $579.45 in 1878, and the judgment was still due and unpaid, and execution thereon having been issued was duly returned "no property."

The amended bill also contains an averment that there was in fact no jury drawn in the cases in which the two judgments were obtained and no verdicts rendered therein, although the records of these judgments show a jury trial and a verdict in each case.

To this bill as amended the defendants demurred, setting up the same grounds of demurrer as to the original bill, and also the additional grounds, (1) that the bill made a new case; (2) that the matters stated in the amendment were not germane to the purposes and object of the original bill, and stated new matter; (3) that the bill as amended was multifarious.

The demurrers to the amended bill were sustained, and the bill was finally dismissed.

*Mr. W. S. Reese, Jr.,* and *Mr. Robert A. Howard* for appellants. *Mr. Solicitor General* was on their brief.

*Mr. Alexander Troy* and *Mr. Henry S. Cattell* for appellees, except the Henshaw heirs. *Mr. W. A. Gunter* filed a brief for the Henshaw heirs.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The principal claim against the defendants is based upon the manner in which the two separate judgments were obtained against the defendant Beebe, and the administrator of Henshaw, in the Circuit Court of Alabama on February 6, 1885. The amount due on one of those judgments (that against Beebe) was paid into the United States Treasury on July 1, 1886, and this suit was commenced in March, 1890.

The grounds upon which the court is asked to set aside the judgments so entered are (1) fraud in procuring them, and (2) the absence of power on the part of the district attorney to make the compromise, and the consequent invalidity of the judgments entered thereon.

The only ground which the allegation of fraud in relation to the judgments is based consists in the averment in the bill that the defendants came into court and represented that they were poor men; that Beebe and the estate of Henshaw were without property out of which any judgment could be collected or paid; that no part of any judgment could be collected by due process of law; that nothing could be made out of them or

either of them or their estates by execution, but that if the court would allow a jury and a verdict to be entered against them for $100 they and each of them would pay said judgments and costs. Accordingly judgments were so taken without any evidence given or hearing had upon the merits of the claim.

It is manifest that these allegations would furnish no defence to the cause of action on the part of the United States against the defendants as sureties on the bond of Widmer. The statements had no tendency to prevent full preparation for trial on the part of complainant, nor did they tend in any way to obstruct the full presentation of the cause of action against the defendants on the trial. It is plain, therefore, that the representations, assuming them to have been false, could not constitute such a fraud as upon well settled principles a court of equity will relieve against by setting aside a judgment in a case where such representations were made. *United States* v. *Throckmorton*, 98 U. S. 61; *Ward* v. *Town of Southfield*, 102 N. Y. 287, 292. The first case has also been cited with approval in *Moffat* v. *United States*, 112 U. S. 24, 32, although a distinction is therein made taking it out from the rule recognized in *Throckmorton's* case.

But in fact there was no deception in the case. The bill itself avers that the estate of Henshaw had been declared insolvent upon a report of the administrator in 1880, and there is no allegation that the estate was not insolvent at that time. There is on the contrary a distinct allegation that the defendant Beebe, at, before and since July 2, 1880, had been insolvent and without sufficient property to pay his debts, including his indebtedness to the United States, and also that Ferris Henshaw at the time of his death was insolvent and without sufficient property to pay his debts, and that by reason of the insolvency of Beebe and Henshaw and the estate of Henshaw, the Government was entitled to priority of payment. Section 3466, Revised Statutes of the United States.

The insolvency of Beebe and the estate of Henshaw was thus made a material averment of the bill in order to base the demand upon the part of the United States for priority of payment of its debt of more than $28,000, which would exist, as

was alleged, upon the setting aside of these judgments. It is obviously impossible to found an allegation of fraud upon a representation made by and for the defendants in open court, which simply states as a fact that which the bill of the complainant itself distinctly avers was a fact. It is true the defendants, as the bill alleges, based their application for reduced judgments upon this fact of insolvency, but whether the application were or were not meritorious is quite immaterial upon the issue of fraud, so long as the statements upon which it was made were neither fraudulent nor even false.

It is entirely plain there was no fraud in the case, and therefore this ground for complainant's relief cannot be sustained.

But a very different question arises from the alleged absence of power on the part of the district attorney to make the compromise and the consequent invalidity of the judgment entered thereon.

By demurring to the amended bill it is admitted that in former suits commenced by complainant against the defendants Beebe and the administrator of the estate of Henshaw, upon a claim to recover some twenty-eight thousand dollars with interest for a number of years, based upon the liability of the defendants upon a bond to the United States executed by them as sureties, two separate judgments were entered in favor of the United States at a term of the United States Circuit Court for the Middle District of Alabama, each judgment being for the sum of only $100 and costs, and that although the judgment records showed a regular trial before a jury and a verdict in each case, yet in truth there had been no jury, no witnesses, no evidence and no verdict, and that the judgments were simply the result of a compromise of the claim in each of the two suits as agreed upon by the district attorney on the one side and the defendants upon the other. Upon these facts the appellant claims that the judgments were wholly void for want of jurisdiction in the court to authorize them.

The appellants also claim that if not void, the judgments were at least irregular, and upon the facts averred in the bill ought to be set aside.

We do not think that they were void as if rendered by a

court having no jurisdiction of the person or of the subject-matter, as confessedly the court had jurisdiction over both; but the facts just stated and which are admitted by the demurrers are enough in our opinion to call for the setting aside of those judgments. It is enough, without alleging fraud in their entry, that they simply carry out and represent a compromise made by the district attorney which he had no power to enter into, and which rendered the judgments so far unauthorized as to permit a suit to set them aside.

We think there can be no serious question that a district attorney of the United States has no power to agree upon a compromise of a claim in suit except under circumstances not present in this case. There is no statute of the United States and no regulation has been called to our attention giving a district attorney any such power, but, on the contrary, it is provided in paragraph 7 of the regulations established by the Solicitor of the Treasury, and approved by the Attorney General, pursuant to section 377 of the Revised Statutes of the United States, that no district attorney shall agree to take a judgment or decree for a less amount than is claimed by the United States, without express instructions from the Solicitor of the Treasury, unless circumstances exist which do not obtain in this case. The power to compromise a suit in which the United States is a party does not exist with the district attorney any more than a power to compromise a private suit between individuals rests with the attorney of either party, and that such an attorney has no power to compromise a claim in suit has been frequently decided. *Holker* v. *Parker*, 7 Cranch, 436. In that case it was remarked by Marshall, Chief Justice, that—

"Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise; yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there can be no hesitation in saying that the compromise, being un-

authorized and being therefore in itself void, ought not to bind the injured party."

The same has been held in Massachusetts in *Lewis* v. *Gamage*, 1 Pick. 347; and in New York in *Barrett* v. *Third Avenue Railroad Company*, 45 N. Y. 628, 635, and *Mandeville* v. *Reynolds*, 68 N. Y. 528, 540. And see *Kilmer* v. *Gallaher*, Supreme Court of Iowa, December 22, 1900, 52 Cent. L. J. 150, and note; *Bigler* v. *Toy*, 68 Iowa, 688. Indeed, the utter want of power of an attorney, by virtue of his general retainer only, to compromise his client's claim, cannot, we think, be successfully disputed.

A judgment entered upon such a compromise is subject to be set aside on the ground of the lack of authority in the attorney to make the compromise upon which the judgment rests. *Prima facie*, the act of the attorney in making such compromise and entering or permitting to be entered such judgment is valid, because it is assumed the attorney acted with special authority, but when it is proved he had none, the judgment will be vacated on that ground. Such judgment will be set aside upon application in the cause itself if made in due time or by a resort to a court of equity where relief may be properly granted.

In *Robb* v. *Vos*, 155 U. S. 13, it was held that although the judgment was on its face valid and regular, yet inasmuch as the attorney who appeared on behalf of one of the defendants did so without the consent of his principal, the remedy of the principal, when the facts came to his knowledge, was in equity, where the judgment might be set aside as to him. So, if the judgment be in fact entered upon a compromise made by the attorney who had no authority to make it, the judgment may be attacked and set aside in an equitable action upon proof of the necessary facts. Although the judgment is not void for want of jurisdiction in the court, it will yet be set aside upon affirmative proof that the attorney had no right to consent to its entry.

It is said that the judgment being valid on its face, evidence to contradict its recitals is not admissible unless in case of such a fraud as will be relieved against in a court of equity. Fraud under certain circumstances is a ground upon which a judgment may and will be set aside; but in addition to such ground,

where, as in this case, the judgment is entered upon a compromise made by an attorney, entirely unauthorized, and without any trial, we have no doubt that such fact may be proved in order to lay the foundation for an application to a court of equity to set the judgment aside, although the proof contradicts the record of the judgment itself and shows that in fact there was no jury, no trial and no verdict.

It is however urged that the Government has lost its right to assail these judgments because of the lapse of time and because one of the judgments was paid before the commencement of this suit. The bill shows that they were entered on February 6, 1885, and that on July 1, 1886, Beebe paid the amount of the judgment against him into the Treasury of the United States. The bill was not filed until March 10, 1890, and it is therefore said that the Government has ratified the action of the district attorney by a failure to proceed to set the judgments aside at an earlier date than it did.

It is not averred in the bill to whom Beebe paid the amount of the judgment, but there is simply a statement that it was paid into the Treasury of the United States. We must probably assume from such averment that the payment was made to an officer who had the right to receive the money, but it is not charged that such officer received it with knowledge of the facts preceding the entry of the judgment and by virtue of which such judgment was entered. There would be nothing in the record of the judgment itself which would show anything other than a regular trial of the case and a verdict of a jury upon which the judgment was entered; consequently there would be nothing in the record which would charge the officer with knowledge that the judgment was only the result of and represented a compromise made by the district attorney, which he had no power to make.

In addition to this want of notice there is an averment in the bill that the facts and circumstances set out therein as the basis of the relief asked for by the bill had only come to the knowledge of the complainant on or about March 5, 1890. From 1885, when the judgments were entered, no one having authority to act in the premises for the Government had any knowledge of these facts until March, 1890, and this the demurrers

admit. Generally speaking, the laches of officers of the Government cannot be set up as a defence to a claim made by the Government. *United States* v. *Kirkpatrick*, 9 Wheat. 720, 735; *United States* v. *Vanzant*, 11 Wheat. 184; *Dox* v. *The Postmaster General*, 1 Pet. 318, 325; *Hart* v. *United States*, 95 U. S. 316; *Gaussen* v. *United States*, 97 U. S. 584.

But we fail to see wherein the officers of the Government have been guilty of laches. There has been no ratification of any unauthorized act of the district attorney by reason of any delay on the part of the Government after knowledge of the facts, and without that knowledge there can be no ratification and in this case no laches.

Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken. This is as true in the case of the Government as in that of an individual. Knowledge is necessary in any event. Story on Agency, 9th ed. sec. 239, notes 1 and 2. If there be want of it, though such want arises from the neglect of the principal, no ratification can be based upon any act of his. Knowledge of the facts is the essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them. Here, it is denied by an express averment in the bill to that effect, and must be taken as a fact. There being no knowledge of the facts on the part of the Government until March, 1890, we think there were no laches on its part which would bar the maintenance of this suit. We think it cannot be said that a failure to earlier obtain knowledge was evidence of neglect upon the part of the officers of the Government, even though neglect would affect the Government in its right to maintain this suit.

Nor do we think the omission to make in the bill an offer to repay the hundred dollars and costs paid into the Treasury of the United States constituted a fatal defect in the pleading. It was a payment of money only, and the amount might be properly credited to the representatives of Beebe upon the trial of the action, and constitute by that amount a reduction of the claim of the Government; or if, upon the trial, the compromise

being set aside and the cause tried on its merits, it should appear there was nothing due to the Government on its claim, the amount paid by Beebe into the Treasury together with interest thereon might be the subject of judgment against the Government. At any rate, no payment has been made upon the judgment against Henshaw's estate, and the payment made by Beebe did not operate as a payment of the judgment against that estate, because by the terms of the agreement as set forth in the bill the compromise consisted in a promise to pay by each the amount of each judgment of a hundred dollars and costs. The amended bill is not therefore defective so as to be demurrable as not containing facts sufficient to constitute a cause of action. And we do not think it is multifarious. The amendment but added another claim to those already made which were averred to be prior liens upon the lands in the hands of the Henshaw heirs at law. If the lands described in the bill, or any portion of them, have been conveyed to *bona fide* grantees for value, nothing in this opinion can be taken as in any way passing upon the question of their right to insist that they took the lands free and clear of any lien in favor of the Government, other than the $100 judgments.

To conclude, we are of opinion that the district attorney had no authority to compromise the claim of the Government by consenting to the entry of the judgments in question and as that unauthorized act on his part has never been ratified by the Government, with knowledge of the facts, and no laches are in reality attributable in this case to the Government, which proceeded at the earliest moment after the discovery of the facts to file this bill, we are of opinion that a cause of action was set forth in the amended bill and that the demurrers to such amended bill should be overruled.

*The judgments of the United States Circuit Court of Appeals for the Fifth Circuit and of the Circuit Court of the United States for the Middle District of Alabama are therefore reversed and the case remitted to the latter court with directions to overrule the demurrers, with leave to the defendants to answer, and for such further proceedings as are consistent with this opinion. So ordered.*