UNITED STATES of America, Plaintiff,

v.

Gene IRWIN, et al., Defendants.

Civ. A. No. CA–5–78–27.

United States District Court,
N.D. Texas,
Lubbock Division.

March 25, 1983.

James A. Rolfe, U.S. Atty., Dallas, Tex., Roger L. McRoberts, Asst. U.S. Atty., Lubbock, Tex., for plaintiff.

Aubrey J. Fouts, Lubbock, Tex., for defendants Cooley Cotton Co., Inc., Royce W. Cooley, Joyce G. Cooley.

Max Ramsey, Odessa, Tex., Ronald E. Ragsdale, Andrews, Tex., for defendant Gene Irwin.

## MEMORANDUM OPINION

WOODWARD, Chief Judge.

The above case was tried before the court without a jury on the 23rd day of March, 1983 with all attorneys and parties present. After hearing and considering the pleadings, the briefs and arguments of counsel, and the evidence at the trial, the court files this memorandum opinion which shall constitute its findings of fact and conclusions of law.

The Government is suing Mr. Irwin for the amount now claimed by the Government to be due and owing on four Commodity Credit Corporation (CCC) loans to him in connection with his production of cotton and which loans were processed through the Andrews County Agricultural Stabilization and Conservation Service (ASCS). The *total amount of these loans* as of April 20, 1976 was $73,100.50.

The court finds the following facts to be established by the evidence in chronological order:

On December 31, 1975, as shown by Government's Exs. 1 through 4 inclusive, the defendant, Gene Irwin, a producer of cotton, executed his notes and security agreements for the four underlying obligations and notes in question in this case and totaling the above sum of $73,100.50 inclusive of interest to April 20, 1976.

On April 20, 1976, Mrs. Worley, the Acting County Executive Director of the local ASCS office, received a telephone call from one of the gins in the area, stating that Mr. Irwin was selling the cotton which was the subject of the above security agreements and asked that the interest be figured to date; and also on this same date, Mr. Irwin called Mrs. Worley and stated that he wanted to redeem the cotton that day.

The regular County Executive Director, Mr. Tabor, was out of the city and Mrs. Worley was acting in that capacity, and she was authorized to do so. As requested, Mrs. Worley computed the interest and prepared the necessary documents to enable Mr. Irwin to redeem his cotton. Government's Exs. 7 and 8.

On that same day, April 20, 1976, Mr. Irwin came to the local ASCS office and had in his possession a draft dated April 19, 1976 in the amount of $73,100.50 signed by Gene Irwin as seller and directed to Commodity Credit Corporation *through* the Texas Commerce Bank, Lubbock, Texas. Government's Ex. 9. On this occasion, Mrs. Worley discussed the draft with Mr. Irwin and Mr. Irwin informed her that the draft was good and that he had checked on it. Upon receiving the draft, Mrs. Worley gave Mr. Irwin the warehouse receipts representing the security for his loans to CCC, and Mr. Irwin surrendered them, before collection of the draft, to Cooley and they were in turn sold to a third-party purchaser for value.

As above indicated, the necessary releases of the security agreements held by the CCC were prepared, probably after the draft had been received from Mr. Irwin by the ASCS on this date. None of this procedure was unusual and was that ordinarily followed in similar cases. The draft was delivered by Mr. Irwin to Mrs. Worley and the amount thereof was sufficient to pay his obligations to the CCC and the repayment records on the loans were prepared by Mrs. Worley and also handed to Mr. Irwin. Government's Exs. 11 and 12. Each of these relevant records, Government's Exs. 11 and 12, contained this clause:

"Credit for this repayment is subject to collection of checks and verification of computations."

At this same time, CCC Form 257 was prepared, Government's Ex. 10, which is

the form used to transmit the draft and in this case it was transmitted to the Federal Reserve Bank at Kansas City for further collection. The original of this form with the original draft and one copy thereof was sent to the Federal Reserve Bank at Kansas City and the other copy was kept by the local ASCS office. The original of this form was transmitted by the Federal Reserve Bank to the data processing section of the CCC in Kansas City.

The evidence further establishes that after all of the documents were prepared, it was too late to place them in the afternoon mail. Mrs. Worley locked the draft and accompanying documents in the safe for overnight storage and took them out the next morning and mailed them direct to the Federal Reserve Bank in Kansas City.

The evidence is silent as to exactly when the draft was received in Kansas City but the evidence does establish that the draft was transmitted by the Federal Reserve Bank in Kansas City to the Federal Reserve Bank in Dallas and that it reached the Texas Commerce Bank in Lubbock, Texas on April 28, 1976. This date is established by a witness for the defendant, Mr. Wayland. It was also established by this same witness that the Federal Reserve Bank had forwarded the draft to Texas Commerce Bank for collection on the day before, April 27, 1976. The records of Texas Commerce Bank show that the draft was presented to Cooley Cotton Company, Inc., or one of its agents, on April 29, 1976, but the item was not accepted by Cooley and the bank in Lubbock returned it to the Federal Reserve Bank in Dallas on April 29, 1976.

By cash letter dated May 4, 1976, the Federal Reserve Bank at Dallas transmitted the draft again to the Texas Commerce Bank in Lubbock and the Lubbock bank received it on May 5, 1976. On the following day, May 6, 1976, the draft was again presented to Cooley, it was not accepted, and on that date of May 6, 1976, it was returned to the Federal Reserve Bank in Dallas with the notice of dishonor.

Government's Ex. 14 indicates that the draft, or at least a draft in the exact same amount, was returned by the Federal Reserve Bank at Dallas to the Federal Reserve Bank in Kansas City by instrument dated May 10, 1976 and received by the Kansas City Federal Reserve Bank on May 11, 1976.

The Kansas City office of the CCC immediately called Mr. Kermit Decker, a program specialist in the Texas State ASCS office, informing him that the draft had not been honored by Cooley Cotton Company, Inc. On this same date of May 11, 1976, Mr. Decker informed Mrs. Worley by telephone of this occurrence and Mrs. Worley immediately, and on the same date, called the defendant, Mr. Irwin, who stated that he would go to Seminole and find out what he could about the problems involved.

The draft has never been honored and Mr. Irwin has not paid any of the sums due and owing on the underlying obligations created in favor of the CCC by Government's Exs. 1 through 4, inclusive.

It also appears that Mr. Irwin was, during the periods in question, the chairman of the County Executive Committee that administered locally the programs of the ASCS in Andrews County, Texas and was chairman at the time of the transactions in this case.

■ From the facts established at the trial in this court, the court has concluded that the Government is entitled to a judgment against Gene Irwin for the amount due and owing on the underlying obligations represented by the loans from CCC to Mr. Irwin on December 31, 1975.

The Government filed this case March 10, 1978, seeking recovery of all amounts due and owing it as the result of these transactions with Mr. Irwin. The case was set for trial in 1979, and on the date set for the trial Mr. Bass, an Assistant United States Attorney, appeared and announced to the court that the case had been settled. It appears that prior to the date set for trial, the attorney for Mr. Irwin and Mr. Bass conferred and agreed on a settlement

which would enable the Government to recover only $5,000.00 of the $73,100.50 which it claimed to be due. It does not appear that the United States Attorney for the Northern District of Texas or any official or officer of the Civil Division of the Department of Justice approved such a settlement. Since the amount in controversy exceeded $60,000.00, Mr. Bass, as an Assistant United States District Attorney, was not authorized to enter into any binding settlement. 28 C.F.R. Appendix to Subpart Y § 2(a) (1979).

Since the parties did not submit a proposed judgment of dismissal, the court again inquired of the status of the case, determined that it had not been settled, and again set it for trial at this term of court. It does not appear that there is any serious contradiction in the evidence on the above finding of fact.

## PLEA OF SETTLEMENT

The defendant, in defense of the Government's claims, asserts that the matter had been settled and compromised, that the recovery by the Government is barred because of a previous judgment entered by this court in the same suit against certain co-defendants, Cooley Cotton Company, Inc. and Mr. Cooley, and other defenses which will be hereinafter noted and discussed.

■ The agreement between Mr. Bass as an Assistant United States Attorney, and the attorneys for Mr. Irwin, to settle and compromise this case cannot be enforced. Mr. Bass had no authority to enter into such a settlement, the regulations specifically prohibited a settlement by an Assistant United States Attorney involving the amounts in this case, and no other authority for the settlement was ever given. It is well established that an unauthorized Government official or employee cannot bind the United States of America unless fully authorized to do so. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *see also United States v. Beebe*, 180 U.S.

343, 351, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901).

## PLEA IN ABATEMENT

■ The plea in abatement has been orally overruled by the court. It is true that on March 3, 1983 judgment was entered for the Government against the Cooley interests for the amount shown in the claims by the Government against Mr. Irwin. There has been no satisfaction of this judgment against Cooley Cotton Company, Inc. or Royce W. Cooley individually. The defendant has cited *James & Company v. Statham*, 558 S.W.2d 865 by the Texas Supreme Court in 1977. This case does not support the defendant's position on the plea of defendant in bar of judgment as this case requires not only that a judgment be entered on the same claim against a third party but that the judgment must be satisfied. If such were the case, recovery against Mr. Irwin would be barred in this case, but since there has been no satisfaction of the judgment against the Cooley interests, this plea of defendant in bar of judgment must be denied.

## GOVERNMENT'S CLAIM

The Government is seeking to recover in this case on the basis of the underlying obligations that were created by the loans from the CCC to Mr. Irwin on December 31, 1975 and as evidenced by Government's Exs. 1 through 4, inclusive. In defense of the Government's allegations, the defendant points to the provision on the back of one or more of the notes stating that a producer cannot be personally liable on the loans but only the cotton which is given as security therefor is to be held responsible. The statutory authority is 7 U.S.C. § 1425.

■ While this defense would be valid in those cases where the producer elected not to pay the loans when due but to deliver the cotton to the Government instead, such a defense is not available under the facts of this case. Mr. Irwin redeemed his cotton, presumably to get a price in excess of his loan commitments, and did not relinquish the cotton to the Government in satisfaction of the loans. He requested and was

given the warehouse receipts representing the security for the loans and disposed of them by delivery to Cooley, and from Cooley to third-party purchasers for value. His acts in this regard prevent him from asserting that only the cotton can be used to repay the loans because by his own acts, he has prevented the CCC from using the cotton as security. This is not a valid defense.

The court does not find any negligence on the part of the ASCS or the CCC that would constitute a defense to the recovery on the underlying obligations. This transaction was handled in the usual course of business by the local ASCS office, and although the practice might not be classified as a good business practice, this transaction was treated no differently from any of the others except that the borrower involved was himself the chairman of the County Executive Committee of the local ASCS.

Even if the Government had elected to recover on the dishonored draft, instead of pursuing its action on the underlying obligations, recovery would be allowed in favor of the Government. The draft was presented by Mr. Irwin to the Andrews County ASCS on April 20, 1976, and after attempts for collection had been made through the Federal Reserve Banks and by the Texas Commerce Bank contacting Cooley who refused to honor the draft, Mr. Irwin was notified on May 11, 1976 that the draft had in fact been dishonored. This is well within the thirty-day period allowed by Section 3.503(b)(1) of the Uniform Commercial Code of the State of Texas (UCC), codified in the Texas Business & Commerce Code Ann. (Vernon 1968). Further, at least one of the documents, Government's Exs. 11 and 12, contained the qualification that "[c]redit for this repayment is subject to collection of checks and verification of computations." There is no way that the draft itself, without collection thereon, can be held as payment for the loans in question. *See* UCC § 3.802 Official Comment 3.

Defendant asserts that Mr. Irwin was not a drawer of the draft and therefore notice of the dishonor should be given to him in seven days as he was an endorser under Section 3.503(b)(2), UCC. The court does not agree with this and finds that Mr. Irwin was in fact the drawer of the instrument entitling CCC to thirty days after the date of the issue of the draft to present it for collection.

Because the draft was to be charged to the account of Cooley, defendant asserts that Cooley is the drawer and cites for authority thereon to Section 3.503 of the UCC, but this is not the situation in this case. Here no one expected the draft to be paid on the account of Mr. Irwin, but the facts definitely establish that he was the one who drew the same on the account of Cooley who is the drawee. Failure to present the draft for collection within the seven-day period does not prevent CCC from recovering from Mr. Irwin even if the Government had elected to sue for collection on the draft rather than on the underlying obligations.

The attorney for the plaintiff will prepare the appropriate judgment, with prejudgment interest at the rate as provided by law, and post-judgment interest at the rate of 9.16% per annum as provided by law. The proposed judgment will be sent to the attorneys for defendant for approval as to form only and then submitted to the court for entry.