## DELAWARE SHIPPING CORPORATION

v.

## M/V MINI LYMPH, her engines, boilers, tackle, apparel, etc., in rem, et al.

### Civ. A. No. 82–2404.

United States District Court,
E.D. Louisiana.

Aug. 17, 1983.

James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for plaintiff.

Ashton R. O'Dwyer, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for defendants.

### MEMORANDUM AND ORDER

MENTZ, District Judge.

The complaint in this matter was filed on June 8, 1982, alleging that the M/V MATHILDE was on July 11, 1979 at anchor in the Mississippi River, when the M/V MINI LYMPH collided with this vessel, which was owned by Delaware Shipping Corporation. Plaintiff prays for $300,000 in damages.

Answer was filed in the nature of a general denial, alleging that the complaint was barred by laches, and that plaintiff's damages, if any, were caused by the fault and neglect of Delaware Shipping Corporation. There was a counterclaim by ELMINI LYMPH, INC., alleging that the M/V MINI LYMPH was damaged in the amount of $50,000, for which ELMINI LYMPH, INC., as owner, should recover.

In addition, there was a third party complaint which alleged that while the M/V MINI LYMPH and the M/V MATHILDE were anchored in the Mississippi River, that the M/V MATHILDE came into collision with the M/V MINI LYMPH, and as a result of the M/V MATHILDE's negligence, damages resulted in the amount of $50,000. The third party complaint asked for judgment against Delaware Shipping *in personam* and the M/V MATHILDE *in rem*.

On May 20, 1983, a motion was filed to substitute the law firm of Phelps, Dunbar, Marks, Claverie & Sims, in place of the law firm of Faris, Ellis, Cutrone & Gilmore, which order was duly entered.

On May 23, 1983, ELMINI LYMPH, INC. requested an expedited hearing relative to the breach of an alleged compromise agreement. A motion was attached thereto requesting an order to enforce the alleged compromise of May 12, 1983, and attached thereto was the affidavit of Charles R. Talley, one of the attorneys for ELMINI LYMPH, INC., who stated that on the morning of May 12, 1983, he conferred on two occasions with Mr. Gilmore, who accepted a $10,000 compromise offer on behalf of Delaware Shipping Corporation. The affidavit also alleges that the following telex had been sent to Mr. Gilmore on May 12, 1983:

I have conferred with my principals, and they reject the invitation to pay DLRS $12,500 in this case. However, I have

been authorized to communicate a firm offer to settle any and all claims by MATHILDE against MINI LYMPH or FANNIE for DLRS $10,000. This offer will remain open for 72 hours, at which time it is automatically withdrawn.

A memorandum in opposition to defendant's motion to enforce settlement was filed, which included the affidavit of J.Y. Gilmore, Jr., in which he states that he had recommended his client to compromise for "not less than $10,000." Further, on May 5, 1983 he received a telex from the agent for Delaware Shipping Corporation, and "pursuant to said telex, approximately 10:00 a.m. on May 12, 1983, he telephoned Mr. Charles R. Talley, counsel for the M/V MINI LYMPH, and accepted, on behalf of Delaware Shipping Corporation, an outstanding offer to settle this matter for the sum of $10,000."

The affidavit then states that after speaking with Mr. Talley, he telexed the agent for Delaware Shipping that he had settled the case for $10,000, and immediately received a return telex stating that "we did not repeat did not authorize you to settle for USD 10,000 or at any other amount." He then phoned Mr. Talley and told him that "I apparently wasn't authorized to accept the settlement."

An examination of the telex from Gestion Maritime (agents for Delaware Shipping), which is somewhat ambiguous, might be construed as having given Mr. Gilmore sufficient authority to enter into a settlement. The telex is composed in rather poor English and syntax.

A hearing was had on this motion on June 15, 1983, and the Court granted defendant's motion and agreed to issue a written opinion explaining its ruling. However, shortly thereafter, a rehearing was requested by Delaware Shipping, primarily based upon the holding of the United States Supreme Court in *U.S. v. Beebe*, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901). This case might be distinguished from the present case, because it involved the statutory power of a United States Attorney to compromise a claim of the United States of America. A reading of the opinion would indicate that the decision not to enforce the compromise related primarily to the fact that the U.S. Attorney exceeded his statutory power in the matter. However, in the *Beebe* case, the following observation was made:

> Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise; yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there can be no hesitation in saying that the compromise, being unauthorized and being therefore in itself void, ought not to bind the injured party.

*Id.* at 351–52, 21 S.Ct. at 374. In *Cia Anon Venezolana v. Harris*, 374 F.2d 33 (5th Cir.1967), the appellant's attorney had entered into a settlement agreement, being authorized by the Claims Manager in New York, with whom he had handled the case for almost two years, but later the company denied the settlement, on the ground that the Claims Manager in New York had not obtained authority from the home office of the company in Venezuela.

The court noted that "There is no question here of the fairness of the settlement. There is no question of good faith." *Id.* at 35. The court stated: "Surely, such a settlement should not be overturned because of certain alleged policies within appellant's office which were unknown to its counsel or to its Claims Manager." *Id.* at 36.

We have examined the various cases cited by the Fifth Circuit in the *Harris* case. One of the cases relied upon was *Ingalls Iron Works Company v. Ellen Gregg Ingalls*, 177 F.Supp. 151 (N.D.Ala.1959), *aff'd*, 280 F.2d 423 (5th Cir.1960). After citing several cases where the court had enforced a compromise made by an attor-

ney, the District Court noted that these cases involved situations where a compromise had been arrived at in good faith, and was fair and equitable. The court further noted that the general principle that "attorneys may litigate but may not settle controversies" had been altered by Chief Justice Marshall as far back as 1813, in the case of *Holker v. Parker*, 7 Cranch (11 U.S.) 436, 3 L.Ed. 396 (1813), where he used the following language:

> Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise; yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed on, or not fairly exercised in the case.

The court noted in the *Ingalls* case that the company's chief law officer and another advisory attorney, together with the chief executive officer, were present at the time the compromise was agreed upon, and further that it was some two and one-half months before the agreement was rejected by the Company's board of directors. In holding that *Holker v. Parker* was still the law, the court enforced the settlement. Although the parties have cited cases from various jurisdictions, this Court feels it should rely primarily on the *Harris* and *Ingalls* cases from this Circuit.

The reasonableness of the settlement is indicated by the previous offer of Delaware Shipping made on May 6, 1983, by Mr. Gilmore, in the amount of $12,500.00; and in view of the laches defense (suit not filed until two years, ten months and 28 days after incident) it cannot be said that the settlement figure was unreasonable. The Court notes that there is no contention that the $12,500.00 offer was not authorized.

In reviewing this record, there is no indication of negligence on the part of Mr. Gilmore. While the Court does not have before it the entire file of Mr. Gilmore, but only the telex from Gestion Marine, the telegram could be construed as authority for him to compromise. In any event,

there is no affidavit in the record from either Gestion Marine, or Delaware Shipping, that he acted unreasonably or beyond his authority.

Under these circumstances, the Court will AFFIRM its original ruling and enforce the settlement in accordance with the minute entry of June 15, 1983.