UNITED STATES of America, Plaintiff,

v.

Lester HOWELL, Jack Brown Shaw, Joseph Kirkland, Randall Aldridge, Bruno Tubertini, Alden Wallace, Kenneth Taylor, Ouida Massengill, James Warren, Inverness Construction Company and Little Brothers Construction Company, Inc., Defendants.

Civ. A. No. J88–0020(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 7, 1988.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., David Orbuch, Trial Atty., Dept. of Justice, Civil Div., Washington, D.C., for plaintiff.

Orma R. Smith, Jr., Corinth, Miss., Little Brothers Const. Co.

John Collette, Jackson, Miss., for Kirkland.

John A. Hatcher, Booneville, Miss., for Taylor.

Howard Dyer, III, Greenville, Miss., for Tubertini.

John P. Fox, Houston, Miss., for Shaw.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Jack Brown Shaw to dismiss. Plaintiff United States of America filed timely response to the motion. The court, having considered the memoranda with attachments submitted in connection with the motion, is of the opinion that the motion should be denied.

In this action, the United States seeks recovery from Shaw and others pursuant to the civil penalty provision of the False Claims Act, 31 U.S.C. §§ 3729–3731. Shaw claims that this civil action against him is barred by the memorandum of understanding executed in connection with his guilty plea in the criminal case against him arising out of the events at issue in this action or, alternatively, by representations made by federal prosecutors which are not reflected in the memorandum of understanding or, alternatively, by the fifth amendment's prohibition of double jeopardy.

█ The memorandum of understanding, at paragraph 12, contains the following language:

> It is further understood that this Memorandum does not bind any state or local prosecuting authorities or any other federal district not named herein, *except as to the use of Shaw's statements voluntarily given hereunder* ...

Shaw claims that this civil action is barred because the government of necessity will in this lawsuit use statements voluntarily given by him in connection with the plea agreement, in particular his guilty plea, as evidence. However, paragraph 12 also states:

> Further, this agreement does not bind the Attorney General of the United States in regard to any matter, civil or criminal, involving the tax statutes of the United States; *further, this agreement does not bind any agency of the United States ... in regard to any civil claim against Shaw, except as to the extent that restitution is ordered herein.*

It is clear that the memorandum of understanding does not preclude a civil action against Shaw. It is the court's opinion, furthermore, that the prohibition of the use of statements made by Shaw applies only to criminal prosecutions. Thus Shaw's position is without merit.

█ Shaw further claims that, although not reflected in the memorandum of understanding, representations were made to him that the government would not pursue a civil action against him. The occurrence of such statements is placed in serious doubt by paragraph 13 of the memorandum:

> It is further understood that this Memorandum completely reflects all promises,

agreements and conditions made by and between the United States and Shaw. The memorandum of understanding containing this provision was signed by Shaw and by the two attorneys who represented Shaw. Not only does this provision cast doubt on the factual validity of Shaw's claim, but it also forecloses Shaw's reliance on any other statements that may have been made, particularly since Shaw was represented by counsel who would have been aware of the imprudence of relying on anything other than what was contained in the memorandum.

In any event, federal prosecutors had no authority to compromise a civil claim of the United States, at least in the absence of the delegation of such authority, of which no evidence has been presented by Shaw, and the government is not bound by the unauthorized acts of its agents. *United States v. Beebe*, 180 U.S. 343, 351–52, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901); *Dorl v. Commissioner*, 507 F.2d 406, 407 (2nd Cir.1974); *United States v. Kates*, 419 F.Supp. 846, 858 (E.D.Pa.1976); 28 C.F.R. Pt. 0, Subpart Y App. §§ 1(c)(2), 1(d), 4(c)(4). Accordingly, the court concludes that neither the memorandum of understanding nor statements made by federal prosecutors in the course of plea negotiations preclude the maintenance of this civil action.

■ With regard to his claim of double jeopardy, Shaw relies on *United States v. Halper*, 664 F.Supp. 852 (S.D.N.Y.1987), in which the court refused, on double jeopardy grounds, to award a penalty under the False Claims Act's civil penalty provision. The court, however, did not hold that a civil penalty provision was per se a criminal punishment and therefore subject to the strictures of the double jeopardy clause. Rather, the court held that a civil penalty may be considered in the nature of a criminal punishment, and thus can constitute double jeopardy, if the penalty so exceeds the actual damages suffered and expenses incurred by the government that it bears no rational relation to the government's loss. *Halper*, 664 F.Supp. at 854–55. The court in *Halper* held that on the facts presented, the penalty mandated by statute

bore no rational relation to the government's actual losses; the prescribed penalty was $130,000 while the government's actual loss was approximately $600. *Id.* at 855. Thus, the court concluded that such a penalty, which was "entirely unrelated to actual damages suffered," constituted punishment and thus was subject to the prohibition of double jeopardy.

In *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), the Supreme Court rejected a double jeopardy challenge to the application of the civil penalty provision of the False Claims Act to one previously convicted of a crime arising out of the same transaction. The Court's holding was based on its finding that the provision, which allowed double damages and a $2000 penalty, was intended by Congress to be remedial in nature rather than punitive. The Court stated that "*the chief purpose* of the statutes here was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." *Hess*, 317 U.S. at 551–52, 63 S.Ct. at 387–88 (*quoted in Halper*, 664 F.Supp. at 854).

In *Halper*, relied on by Shaw, the court observed that "the *Hess* Court did not stop with an analysis of Congress' intent; instead, it inquired ... into whether the penalty was punitive because it exceeded any amount 'that could reasonably be regarded as the equivalent of compensation for the Government's loss.'" *Halper*, 664 F.Supp. at 854 (quoting *Hess*, 317 U.S. at 554, 63 S.Ct. at 389 (Frankfurter, J., concurring)). However, in this court's view, the *Halper* court's interpretation of *Hess* is questionable. The language relied on was from the concurring opinion of Justice Frankfurter, not from the opinion of the Court. Justice Frankfurter himself characterized the basis of the Court's opinion as construing the statute to be remedial rather than punitive. *Hess*, 317 U.S. at 553, 63 S.Ct. at 388–89 (Frankfurter, J., concurring). The majority opinion emphasized "the line between civil, remedial actions brought primarily to pro-

tect the government from financial loss and actions intended to authorize criminal punishment to vindicate public justice[;]" only those actions intended to vindicate public justice could subject the defendant to "jeopardy" within the constitutional meaning. *Hess*, 317 U.S. 548–49, 63 S.Ct. at 386. In the *Hess* Court's view, the question for decision was whether the statute imposed a criminal sanction, an issue of "statutory construction[,]" and concluded that a remedy "does not lose the quality of a civil action because more than the precise amount of so-called actual damage is recovered." *Id.* at 550, 63 S.Ct. at 387.[1]

It is also noteworthy that Justice Frankfurter, who supplied the language relied on by the *Halper* court, would not have struck down civil penalty provisions such as that at issue in *Hess* even where they failed the "reasonable equivalence" test. In his view, the proper approach was to consider that Congress had imposed more than one sanction for misconduct but provided for the enforcement of the sanctions in two separate proceedings. He concluded that

> where two such proceedings merely carry out the remedies which Congress has prescribed in advance for a wrong, they do not twice permit jeopardy for the same offense. Congress thereby merely allows the comprehensive penalties which it has imposed to be enforced in separate suits instead of in a single proceeding.

By doing this Congress does not impose more than a single punishment.

*Hess*, 317 U.S. at 555, 63 S.Ct. at 389–90 (Frankfurter, J., concurring).

Other courts have enforced civil penalty provisions where the prescribed amount of the penalty was greatly in excess of proven actual damages. For example, in *Berdick v. United States*, 612 F.2d 533, 222 Ct.Cl. 533 (1979), the court imposed under the False Claims Act a penalty of $72,000 for 36 separate violations of the Act, although the evidence suggested that the government's actual loss was in the neighborhood of $1,500.[2]

Even if a civil penalty greatly in excess of actual damages would violate the double jeopardy clause, such a determination would have to be made after trial and would serve as a limit on the size of the penalty which could be imposed rather than as a prohibition of any penalty at all. Thus the possibility of double jeopardy would not provide a basis for dismissing an action prior to trial. Furthermore, the government seeks to recover damages from Shaw apart from the civil penalty which may be assessed under the False Claims Act. As to these claims, the rationale of *Halper* is not even arguably applicable. In light of the foregoing, the court is of the opinion that the double jeopardy clause does not

1. In that regard, the Court likened the civil penalty provision of the False Claims Act to the treble damages remedy of antitrust law, as well as punitive damages, and "the general practice in state statutes of allowing double or treble or even quadruple damages." *Hess*, 317 U.S. at 550–51, 63 S.Ct. at 387. The Court appears to have further distinguished such civil penalty provisions from criminal fines on the basis that for failure to pay a fine imposed for violation of the analogous criminal statute, a defendant could have been sentenced to prison, but that no such punishment was provided for default in payment of the civil penalty. *Id.* at 548, 551, 63 S.Ct. at 386, 387.

2. In *Peterson v. Richardson*, 370 F.Supp. 1259 (N.D.Tex.1973), *aff'd sub nom.*, *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975), the court held that the assessment of a $2,000 penalty pursuant to the False Claims Act for each of 120 false claims "would be unreasonable and not remotely related to both the actual

losses and inexplicable damages incurred by the government" where actual damages were $16,-153.44. However, the court based its decision on its perception of congressional intent that the penalty "reflect a fair ratio to damages in order to make sure the government would be made completely whole." *Id.* at 1267 (citing *Hess* ). The relationship of civil penalties to the double jeopardy clause was not at issue. The court did assess the $2,000 penalty on each of 50 of the false claims, in addition to the statutorily prescribed double damages for all 120 of the false claims, concluding that this sum "would reasonably indemnify and make the government whole." *Id.* Thus the total assessment under the penalty provisions of the False Claims Act was approximately $116,150 in comparison to actual damages proven of approximately $16,150, as contrasted with statutory penalties of approximately $256,150 if the statutory penalty had been assessed for each count.

prohibit the prosecution of this civil action against Shaw.

For the reasons set forth above, the court concludes that Shaw's motion is without merit. Accordingly, it is ordered that the motion of Jack Brown Shaw to dismiss the claims against him is denied.