**In re: Grievance PROCEEDING**

**No. 3:98GP22 (SRU).**

United States District Court,
D. Connecticut.

Oct. 1, 2001.

## MEMORANDUM OF DECISION

UNDERHILL, District Judge.

The Respondent was referred to the Grievance Committee of the United States District Court for the District of Connecticut by a judge of this Court. The referral concerned Respondent's use of a written fee agreement (the "Agreement"), dated November 20, 1996, in which the client: (1) delegated to Respondent complete discretion "with respect to any settlement offers;" (2) authorized counsel to reject settlement offers in counsel's sole discretion, "for any reason whatsoever;" and (3) waived any requirement that Respondent "communicate such settlement offer(s) to" the client. The Grievance Committee concluded that the Agreement violated the Rules of Professional Conduct (the "Rules"), but recommended that this grievance proceeding be dismissed without imposition of any disciplinary action.

The court agrees that the Agreement violated the Rules. Because imposing discipline on the Respondent would not serve the intended purposes of attorney discipline under the circumstances of this case, however, this grievance proceeding is dismissed. This decision will be made public, without use of Respondent's name, in or-

der to improve understanding of and compliance with the Rules.

*Background*

This matter was referred to the Grievance Committee of the United States District Court for the District of Connecticut (the "Grievance Committee") in December 1998. After receiving a response from the Respondent, the Grievance Committee issued a recommendation dated September 23, 1999. The Grievance Committee concluded that Respondent's fee agreement violated the Rules,[1] but recommended that the grievance complaint be dismissed due to the unique circumstances of this case. Thereafter, this matter was transferred to the undersigned from the judge initially assigned to hear it.

On February 14, 2000, the court remanded the matter to the Grievance Committee for consideration of several questions. The Grievance Committee, after receiving a written submission from and taking testimony of the Respondent, issued a Supplemental Recommendation on July 17, 2000, again concluding that the Agreement violated the Rules, but again recommending that this grievance proceeding be dismissed without imposition of any disciplinary action. The Grievance Committed noted, among other things, that the Respondent had stopped using this form of fee agreement upon learning of the issuance of Connecticut Bar Association Informal Opinion 97–31, which with-

drew earlier advice that a lawyer could agree with a client that the lawyer would have the right to reject a settlement satisfactory to the client, but which did not provide for a legal fee to the lawyer's satisfaction. In addition, the Grievance Committee relied on the fact that, despite the terms of the Agreement, Respondent had not kept settlement offers and decisions from the client; instead, Respondent actually did communicate a settlement offer to the client, who rejected it.

On February 7, 2001, the court issued an Order to Show Cause why Respondent should not be disciplined for an apparent violation of Rule 1.2 of the Rules. Counsel for Respondent filed a written response to that order and formally waived presentment by the Grievance Committee as otherwise contemplated by Rule 3(d) of the Local Rules of Civil Procedure. Thereafter, on April 3, 2001, the court heard oral argument.

*Analysis*

Rule 1.2 of the Rules of Professional Conduct provides, in part, that: "A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." The Comment[2] to Rule 1.2 explains: "An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked ... to surrender ... the right to settle litigation that the lawyer might wish to continue."

---

1. The Recommendation noted that, "on its face, the Agreement is inconsistent with Rule 1.2(a), which requires a lawyer to 'abide by a client's decision whether to accept an offer of settlement of a matter;' and Rule 1.4 which requires the lawyer to keep a client 'reasonably informed about the status of a matter' and to 'explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' Taken together, the Committee concluded that these Rules require that a client be informed of settlement offers and given the opportunity to accept or reject them." Recommendation at 2.

2. All references to and quotations from the Rules are taken from the Rules as they were in effect in Connecticut in 1996. There have been minor changes since then. For example, the Rules now include "Commentary" rather than "Comments" after each rule. No changes material to this decision have been made to the Rules since 1996.

Similarly, the Comment to Rule 1.4 provides: "A lawyer who receives from opposing counsel an offer of settlement in a civil controversy ... should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See Rule 1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter."

In short, since adoption of the Rules in 1986, the complete surrender of settlement authority to a lawyer has been expressly prohibited in Connecticut. The fundamental principles that a client must be informed of a settlement proposal and that the decision to settle a case rests with the client alone, however, are much older than the Rules. *United States v. International Brotherhood of Teamsters*, 986 F.2d 15, 19 (2d Cir.1993), *citing United States v. Beebe*, 180 U.S. 343, 350–53, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501–02 (2d Cir.1989); *Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88, 89 (2d Cir.1974); *Barthelmas v. Fidelity–Phenix Fire Ins. Co.*, 103 F.2d 329, 331 (2d Cir.1939).

Respondent seeks dismissal of the grievance, arguing: (1) good faith reliance on Connecticut Bar Association Informal Ethics Opinion 85–19; and (2) Respondent's actions did not violate Rule 1.2 itself, but merely the Comment to Rule 1.2. Neither argument has merit.

■ Respondent's claimed reliance on the Connecticut Bar Association's Informal Opinion 85–19 was misplaced. Because Informal Opinion 85–19 was premised on the Code of Professional Responsibility, that opinion was called into doubt when the State of Connecticut adopted the Rules of Professional Conduct on October 1, 1986, more than ten years before the fee agreement at issue was executed.[3] Although Informal Opinion 85–19 was not formally withdrawn by the Committee on Professional Ethics until the issuance of Informal Opinion 97–31 on November 3, 1997, reliance on Informal Opinion 85–19 became unreasonable upon the adoption of the Rules, which expressly conflict with it.[4] *See* Informal Opinion 97–31 (withdrawing Informal Opinion 85–19 in reliance on Rule 1.2(a)). In any event, the delegation of settlement authority effected by the Agreement was even broader than that permitted by Informal Opinion 85–19.

■ Respondent also argues that there was no violation of Rule 1.2(a), but only of the Comment to Rule 1.2. The court disagrees. Implicit in Rule 1.2(a)'s requirement that a lawyer "shall abide by a client's decision whether to accept an offer of settlement" is both a requirement to communicate all settlement offers to the client and a requirement that the client be permitted to decide whether to accept or not to accept any such offer. Nor can a lawyer escape a violation of the Rules if the lawyer's conduct is expressly prohibited by the explanatory language in the Comments, but not expressly prohibited by the Rules themselves. "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule." Rules of Professional Conduct, Note

3. The District of Connecticut also adopted the Rules, on May 1, 1987, more than nine years before the Agreement at issue was executed.

4. Even if it was not apparent in 1986, upon the adoption of the Rules, that the Agreement was improper, that conclusion should have been obvious by November 1997 upon the release of Informal Opinion 97–31. This matter was not referred to the Grievance Committee until December 1998. Respondent should have entered into a revised agreement that was consistent with the Rules long before then.

on Scope. Even if the court were to accept Respondent's argument that the conduct at issue was expressly prohibited only by language in the Comment to Rule 1.2, which it does not, Respondent's acknowledgment that the Agreement violated the Comment is sufficient to violate Rule 1.2.

Accordingly, the court finds, by clear and convincing evidence, that the Respondent violated Rule 1.2(a) of the Rules of Professional Conduct.

■ Not every violation of the Rules requires the imposition of discipline. The Rules "presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations." Rules of Professional Conduct, Note on Scope. Under all of the circumstances, the court concludes that discipline is not warranted in this case.

The primary purpose of attorney disciplinary proceedings "is the protection of the court, the profession of the law and the public against offenses of attorneys which involve their character, integrity and professional standing." *Statewide Grievance Committee v. Shluger*, 230 Conn. 668, 681, 646 A.2d 781 (1994). Therefore, "[i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." *Doe v. Statewide Grievance Committee*, 240 Conn. 671, 684, 694 A.2d 1218 (1997). *See also Statewide Grievance Committee v. Botwick*, 226 Conn. 299, 307, 627 A.2d 901 (1993); American Bar Association Standards for Imposing Lawyer Sanctions, standard 1.1 (1991) ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."); *see id.* commentary to standard 1.1 ("the primary purpose is to protect the public").

■ Under the circumstances of this case, imposing discipline would not serve a legitimate purpose. First, although the Agreement violated the Rules, Respondent's conduct did not. The Respondent did not actually rely on rights purportedly granted by the Agreement when communicating with the client. Moreover, Respondent stopped including language violative of Rule 1.2(a) in new fee agreements before the referral to the Grievance Committee that initiated this proceeding, so this is not a situation involving recalcitrant counsel or counsel likely to violate the Rules in the future unless disciplined.

Second, the passage of time since Respondent's use of the Agreement renders any discipline to be imposed merely punitive; discipline would not now serve to protect the public. Nor is discipline now required to protect the administration of justice. Respondent has continued to practice law in this District since the referral in 1998 without using the offending language in fee agreements. Accordingly, disciplining Respondent years after an unrepeated and relatively minor violation of the Rules that did not actually harm the public would not serve the primary purposes of attorney disciplinary proceedings.

*Conclusion*

The Grievance Committee's Recommendation and Supplemental Recommendation in this matter (docs. ## 3, 7) are accepted.

**86**

This grievance proceeding is dismissed. The clerk is instructed to close this file.

It is so ordered.